Revised February 24, 2003

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-51147

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO ALBERTO MENDOZA-MATA,
a/k/a Mario Alberto Mendoza, a/k/a Mario Mendoza,
a/k/a Mario A. Mendoza, a/k/a Mario Mendoza-Mata,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

February 20, 2003

Before WIENER and STEWART, Circuit Judges, and RESTANI, Judge.[*]

CARL E. STEWART, Circuit Judge:

Mario Mendoza-Mata ("Mendoza-Mata") appeals from the denial of his motion to withdraw

his guilty plea and to dismiss the indictment entered against him for illegal reentry into the United

States in violation of 8 U.S.C. § 1326. For the following reasons we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

_____

[*]Judge, U.S. Court of International Trade, sitting by designation.

Mendoza-Mata is a citizen of Mexico who obtained permanent resident status in the United States in 1992.  In 1994, Mendoza-Mata was convicted of cocaine possession and sentenced to six years of probation.  In January 1996, Mendoza-Mata's probation was revoked as a result of criminal charges brought against him and he was sentenced to a six year term of imprisonment.  In May 1996, while Mendoza-Mata  was incarcerated, the Immigration and Naturalization Service ("INS") commenced deportation proceedings against him under then § 241(a)(2)(B)(i) of the Immigration and Naturalization Act ("INA") because he had been convicted of a crime  related to controlled substances.

Around this time, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted and identified a broad set of offenses for which convictions would preclude discretionary relief. See AEDPA § 440(d); 110 Stat. 1214. The Illegal Immigration Reform and Immigrant Responsibility Act ("IRRIRA") was also enacted that year. IIRIRA repealed § 212(c)[2] of the INA and replaced it with a  new section that authorizes the Attorney General to cancel removal for a narrow class of inadmissible or deportable aliens. See IIRIRA § 304(b); 110 Stat. 3009-597.  This class of aliens does not include anyone previously convicted of an aggravated felony.

In May 1997, Mendoza-Mata's deportation hearing was held in Huntsville, Texas before an Immigration Judge. At the hearing, Mendoza-Mata conceded deportability, but requested discretionary relief and cancellation of removal, based on his length of residence in the United States

---

[2] The Attorney General under then 212(c) had discretion to waive deportation in cases where a convicted alien demonstrated that he had unrelinquished lawful domicile in the United States for at least seven years. INA § 212(c); 8 U.S.C. § 1182(c). In 1990,  212(c) was amen ded to preclude from discretionary relief anyone convicted of an aggravated felony who had served at least five years imprisonment.  8 U.S.C. § 1182(c). At the time of Mendoza-Mata's conviction, possession of a controlled substance did not preclude convicted aliens of discretionary relief. However,  under the current law, a state felony conviction for possession of a controlled substance is an aggravated felony. See United States v. Hernandez-Avalos, 251 F.3d 505, 508 (5th Cir. 2001).

2

in conjunction with his parents' legal resident status. The Immigration Judge held that Mendoza-Mata was ineligible for cancellation of removal and that "[he was unaware] of any discretionary consideration that might be available in [this] case." Thus, the Immigration Judge ordered that Mendoza-Mat a be deported from the United States. Mendoza-Mata appealed the decision to the Board of Immigration Appeals ("BIA"). Applying AEDPA retroactively, the BIA held that Mendoza-Mata was statutorily ineligible for discretionary relief under § 212(c) because he committed an aggravated felony. The BIA further held that Mendoza-Mata was ineligible for cancellation of removal proceedings. Mendoza-Mata was deported in 1997.

Mendoza-Mata reentered the United States in January 1999 and was arrested on charges of criminal trespass, indecent exposure, and possession of marijuana in March 2000. In June 2000, while on bond, Mendoza-Mata was arrested at his residence by the INS. In August 2000, Mendoza-Mata was indicted for illegal reentry into the United States in violation of § 1326(a) and (b)(2). Mendoza-Mata pleaded guilty to the indictment on December 8, 2000, and the district court set the sentencing hearing for a later date. Prior to his sentencing, the Supreme Court rendered its decision in INS v. St. Cyr, 533 U.S. 289 (2001), which held that the elimination of § 212(c) could *not* be applied retroactively to those persons who would have been eligible for § 212(c) relief at the time of their guilty plea under the law in effect at that time.[3] Based on St. Cyr, Mendoza-Mata moved to withdraw

_____

[3]Enrico St. Cyr ("St. Cyr"), who was a citizen of Haiti and lawfully admitted to the United States as a permanent resident, pled guilty in 1996 to selling a controlled substance. In 1997, after the effective date of AEDPA and IIRIRA, removal proceedings were commenced against St. Cyr. The Attorney General held that under AEDPA and IIRIRA, he did not have discretion to grant a § 212(c) waiver. In his habeas corpus petition, St. Cyr argued that the amendments to the INA should not eliminate his prior eligibility for discretionary relief. Despite the INS's argument that federal courts did not have jurisdiction to consider the petition, the Supreme Court held that its habeas jurisdiction under § 2241 was not repealed by AEDPA and IIRIRA and "that § 212(c) relief remains available for aliens...whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 533 U.S. at 326. Despite the Government's contentions to the contrary, St. Cyr clearly establishes that § 212(c) relief was available to Mendoza-

his guilty plea and dismiss the indictment. At the sentencing hearing, the district court orally denied the motions and sentenced Mendoza-Mata to 24 months imprisonment, three years supervised release, and a special assessment fee. Mendoza-Mata now appeals.

STANDARD OF REVIEW

This Court reviews the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. See United States v. Moore, 37 F.3d 169, 172 (5th Cir. 1994).

DISCUSSION

Mendoza-Mata argues that he should have been allowed to withdraw his guilty plea and have the court dismiss the indictment for illegal reentry into the United States under § 1326. Mendoza-Mata avers that St. Cyr demonstrates that his underlying deportation hearing was fundamentally unfair, deprived him of judicial review of his deportation, and prejudiced him. Thus, Mendoza-Mata asserts that his 1997 deportation order cannot be utilized to support a conviction for unlawful reentry into the United States under § 1326. We must first determine whether Mendoza-Mata has successfully collaterally attacked the validity of his 1997 deportation order.

I.    Collateral Attack on Deportation Order

In Mendoza-Lopez, the Supreme Court held that an alien who is being prosecuted under § 1326 can, in some circumstances, assert a challenge to an underlying deportation order. 481 U.S. 828, 839 (1987). This Court, interpreting Mendoza-Lopez, has formulated a three part test that must be met by an alien seeking to challenge a prior deportation order in a prosecution for illegal reentry under § 1326: the alien must establish that 1) the prior hearing was "fundamentally unfair;" 2) the

Mata at the time of his deportation. See United States v. Lopez-Ortiz, No. 01-21264, 2002 WL 31546535, at *3 (5th Cir. Nov. 18, 2002) (noting that at the time of the alien's removal, "the BIA's understanding of the law, though in compliance with [its] precedent, was an erroneous application of the law").

4

hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and 3) the procedural deficiencies caused the alien actual prejudice. See United States v. Lopez-Vasquez, 227 F.3d 476, 483 (5th Cir. 2000); see also 8 U.S.C. § 1326(d) (1999). If the alien fails to establish one prong of the three part test, the Court need not consider the others. See United States v. Encarnacion-Galvez, 964 F.2d 402, 406 (5th Cir. 1992). In this case, Mendoza-Mata failed to satisfy the "actual prejudice" requirement.

A showing of prejudice means that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." See United States v. Benitez-Villafuerte, 186 F.3d 651, 658 (5th Cir. 1999) (citations omitted). In short, "[i]f the defendant was legally deportable and despite the INS's errors, the proceeding 'could not have yielded a different result,' the deportation is valid for purposes of section 1326." Id.

Mendoza-Mata argues that but for the BIA's failure to afford him the right to apply for discretionary relief, there existed a reasonable likelihood that he would have been granted discretionary relief, thus barring his deportation. Prior to IIRIRA and AEDPA, the Attorney General under then § 212(c) had discretion to waive deportation in cases where a convicted alien demonstrated that he had a lawful unrelinquished domicile in the United States for at least seven years. Mendoza-Mata asserts that he satisfies the seven-year domicile requirement based on his legal residence in the United States in conjunction with that of his parents, who were legal resident aliens when he resided with them as a minor.[4] Mendoza-Mata further asserts that his familial ties and long

_____

[4]The Government argues that Mendoza-Mata has not demonstrated that he would have met the seven year domicile requirement because, at the time of his hearing, he only maintained legal resident status in the United States for five years. See Madrid-Tavarez v. INS, 999 F.2d 111, 112-13 (5th Cir. 1993) (holding that an applicant for § 212(c) relief cannot meet the seven year domicile requirement by counting time spent in the country illegally). Mendoza-Mata counters that the years he spent in his parents' home as a minor should fulfill the seven year domicile requirement

5

presence in the United States further support the likelihood that he would have obtained discretionary relief. Lastly, Mendoza-Mata relies on the Supreme Court's statement in St. Cyr which noted that a substantial percentage of discretionary relief applications had been granted in the past. 533 U.S. at 296. Mendoza-Mata's arguments are unavailing.

As the Government points out, Mendoza-Mata's extensive criminal record and evidence of immoral character would have likely precluded him from obtaining discretionary relief. The Government contends that these factors would weigh heavily against Mendoza-Mata's character references and evidence of familial ties in the United States. We agree. The record contains abundant evidence that demonstrates that Mendoza-Mata would likely not have received discretionary relief.

Apart from the 1994 cocaine conviction for which Mendoza-Mata was deported, the Pre Sentence Report ("PSR") reveals that he was convicted of criminal trespass and indecent exposure, both of which involved sexually deviant conduct, including masturbating in public.[5] The PSR further reveals that Mendoza-Mata also had charges of child recklessness and criminal mischief brought against him for leaving his child in a car unattended for an hour in 105 degree temperature and breaking into an apartment to have sex with a female.[6] Lastly, the PSR reveals that Mendoza-Mata

---

See, e.g, Morel v. INS, 90 F.3d 833 (3d. Cir. 1996) (holding that he could establish the requisite seven years of lawful domicile by relying in part upon domicile of his mother before he reached the age of majority); Lepe-Guitron v. INS, 16 F.3d 1021 (9th Cir. 1994) (holding that parents' "lawful unrelinquished domicile" should be imputed to their minor children under section 212(c)); Rosario v. INS, 962 F.2d 220 (2d. Cir. 1992) (holding that a minor's domicile is the same as that of its parents). We need not reach this issue, however, because we are persuaded that Mendoza-Mata's extensive criminal history would most likely have foreclosed § 212(c) relief.

[5]Mendoza-Mata pled nolo contendere to the two charges and was sentenced to 90 days in jail. He was also arrested for possession of marijuana, however, the charge was dismissed in exchange for the nolo contendere pleas.

[6]These cases were ultimately dismissed, however they were taken into consideration for a plea related to the 1994 conviction for possession of a controlled substance. The charges resulted in the revocation of Mendoza-Mata's probation and the imposition of the six-year term of imprisonment.

6

pled guilty to theft and driving with a suspended license.[7] Although Mendoza-Mata's family and friends submitted character letters in support of discretionary relief, given his criminal history, it is highly unlikely that the Attorney General would have granted him relief.[8]  In fact, the district court noted that "given [Mendoza-Mata's] criminal history, I certainly understand why the immigration authorities would revoke his legal status."

Although Mendoza-Mata does not have to establish with certainty that he would have been granted discretionary relief, Mendoza-Mata has failed to show that there was a reasonable likelihood that he would have been granted such relief. Thus, he has failed to show that he was actually prejudiced by the denial of a discretionary hearing. Because the defendant has failed to successfully collaterally attack the underlying deportation order, the district court properly denied the motion to dismiss the indictment.

II.    Withdrawal of Guilty Plea

The district court may permit a defendant to withdraw his guilty plea at any time before sentencing upon a showing of any "fair and just reason." See FED. R. CRIM. P. 32(e); United States v. Still, 102 F.3d 118, 123-24 (5th Cir. 1996). In reviewing the denial of a motion to withdraw a guilty plea, this Court considers seven factors, whether: 1) the defendant asserted his innocence; 2) withdrawal would prejudice the government; 3) the defendant delayed in filing the withdrawal motion; 4) withdrawal would inconvenience the court; 5) adequate assistance of counsel was available; 6) the

---

[7]Mendoza-Mata was sentenced to one year probation.

[8]Mendoza-Mata notes that at the time of his petition for discretionary relief the Attorney General granted waivers in substantial numbers. See St. Cyr., 533 U.S. at 296 (noting that a substantial percentage of applications for discretionary relief were granted by the Attorney General). Nevertheless, given Mendoza-Mata's criminal history, we are unpersuaded that he would have been granted discretionary relief. We are likewise unpersuaded by Mendoza-Mata's argument that this Court should not consider his criminal history.

7

plea was knowing and voluntary; and 7) withdrawal would waste judicial resources. United States v. Carr, 740 F.3d 339, 343-44 (5th Cir. 1984). No single factor or combination of factors mandates a particular result. Id. Rather the Court makes its determination based on the totality of the circumstances. Id. at 344. The burden of establishing a fair and just reason for withdrawing a guilty plea rests with the defendant. United States v. Brewster, 137 F.3d 853, 858 (5th Cir. 1998).

Mendoza-Mata argues that because "his motion to withdraw his plea was based on a legal defense to the charged § 1326 violation, it is fair to say that he asserted his legal innocence of the offense." The Government counters that Mendoza-Mata's assertion of innocence "is dependent on speculation as to the previous possible, but highly unlikely, exercise of INS administrative discretion." We agree. Because Mendoza-Mata has failed to demonstrate that his deportation proceeding would have likely had a different outcome if he was afforded the opportunity to apply for discretionary relief, his assertion of innocence claim fails. St. Cyr by itself does not prove that Mendoza-Mata is actually innocent. Allowing Mendoza-Mata to withdraw his guilty plea is not warranted by the circumstances of this case. We therefore hold that the district court did not abuse its discretion in denying Mendoza-Mata's motion to withdraw his guilty plea.

## CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Mendoza-Mata's motion to withdraw his guilty plea and dismiss the indictment. AFFIRM.

8