**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 8 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

JOSELITO SANDOVAL,

        Defendant-Appellant.

No. 03-4161

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 1:02-CR-88)**

---

Michael S. Lee, Assistant United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

Sharon Preston, Salt Lake City, Utah, for Defendant-Appellant.

---

Before **SEYMOUR, MURPHY** , and **McCONNELL** , Circuit Judges.

---

**McCONNELL** , Circuit Judge.

---

      Joselito Sandoval was removed from the United States to El Salvador in

1999.  After he entered the United States through Mexico in 2002, Mr. Sandoval

was arrested and charged with illegal reentry of a removed alien in violation of 8 U.S.C. § 1326. Mr. Sandoval entered a plea of guilty, but, immediately before sentencing, he filed a motion to withdraw his plea on the ground that his counsel failed to advise him of an available defense. In support of his motion, Mr. Sandoval argued that his 1999 deportation proceeding was fundamentally unfair and therefore could not be used to establish an element of the illegal reentry charge. The district court denied the Motion to Withdraw, finding that his deportation proceeding was not fundamentally unfair. The district court entered a judgment of conviction and sentenced Mr. Sandoval to 70 months imprisonment and 36 months of supervised release. Exercising jurisdiction under 18 U.S.C. § 3742(a)(2), we AFFIRM.

I.

Section 212 of the Immigration and Nationality Act of 1952 (INA), 8 U.S.C. § 1182, authorized the exclusion of certain aliens from the United States, including aliens convicted of a crime of moral turpitude. *Id.* § 1182(a)(2)(A)(i)(I). As originally enacted, § 212(c) granted the Attorney General discretion to admit excludable aliens who had resided lawfully in the United States for seven consecutive years. *See* 8 U.S.C. 1182(c) ("Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful

2

unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . .").  The Board of Immigration Appeals interpreted this provision to permit any permanent resident alien with seven years of lawful unrelinquished domicile to apply for a waiver of deportation.  *See INS v. St. Cyr*, 533 U.S. 289, 295 (2001) (citing *Matter of Silva*, 16 I&N Dec. 26, 30 (1976)).  However, aliens who had served more than five years in prison for an aggravated felony were not eligible to apply for discretionary relief under § 212(c).  *See id.* at 297 (citing INA § 511, 104 Stat. 5052).

In 1996, Congress passed two laws that limited the availability of relief under § 212(c).  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provided that aliens convicted of an aggravated felony, among other offenses, could no longer apply for discretionary relief.  *See* AEDPA § 440(d), Pub. L. 104-132, 110 Stat. 1214, 1277 (amending 8 U.S.C. § 1182(c)).  The Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) repealed § 212(c) entirely.  IIRIRA § 304(b), Pub. L. 104-208, 110 Stat. 3009-546 (codified at 8 U.S.C. § 1252(a)(2)(C)).  The section that replaced § 212(c) does not authorize the Attorney General to grant relief to aliens who have been convicted of an aggravated felony.  *See* 8 U.S.C. § 1229b.  Shortly after AEDPA went into effect, the Attorney General ruled that § 440(d) was effective immediately and therefore applied retroactively to aliens in removal proceedings.

3

*See In re Soriano*, 21 I & N Dec. 516, 519 (1996). The Attorney General ruled, however, that the amendments did not apply retroactively to aliens who had already submitted applications for relief under § 212(c). *Id.* at 519-21.

In *INS v. St. Cyr*, the Supreme Court considered the effect of these amendments on aliens who had pleaded guilty to deportable crimes before their effective dates. 533 U.S. at 292–93.[1] Enrico St. Cyr pleaded guilty to a deportable offense in 1996. Because he had accrued over seven years of lawful permanent residence, he was eligible to apply for discretionary relief under § 212(c) at the time of his plea. Congress passed AEDPA before his removal hearing began, however, and he was not permitted to apply. *Id.* In his habeas petition, St. Cyr argued that AEDPA did not affect his rights under § 212(c) because he entered his guilty plea before it took effect. *Id.* at 293. The Court found that AEDPA did not include a sufficiently clear statement of intent to apply the amendments retroactively; therefore, the statute could not be construed to have any retroactive effect. *See id.* at 326. The Court agreed with Mr. St. Cyr that the denial of his right to apply for relief from deportation would give retroactive effect to the 1996 amendments. The Court therefore held that "§ 212(c) relief remains available for aliens, like respondent, whose convictions

---

[1] The Court characterized the issue as "the impact of the amendments on conduct that occurred before their enactment and on the availability of discretionary relief from deportation." *St. Cyr*, 533 U.S. at 292–93.

4

were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *St. Cyr*, 533 U.S. at 326.

Joselito Sandoval, a native and citizen of El Salvador, came to the United States in 1986 and became a lawful permanent resident on December 1, 1990. In 1993, Mr. Sandoval pleaded guilty to two counts of burglary. The court sentenced him to seven years of imprisonment, with seven years suspended, and placed him on probation. In January 1994, he pleaded guilty to driving while intoxicated. Because this offense violated his probation, the court revoked his probation and sentenced him to five years of imprisonment. He was released after approximately three years and delivered into the custody of the Immigration and Naturalization Service.[2]

The INS commenced removal proceedings against Mr. Sandoval on August 19, 1997. Although the INS identified the burglary convictions as the grounds for removal, he had accumulated five DWI convictions and one theft conviction by the time of his removal hearing on September 11, 1997. At his hearing, Mr. Sandoval attempted to apply for a waiver of inadmissibility under § 212(c). In an

---

[2] On March 1, 2003, the Immigration and Naturalization Service ceased to exist as an independent agency within the Department of Justice, and its functions were transferred to the Department of Homeland Security. Homeland Security Act, Pub. L. 107-296 Sec. 471, 116 Stat. 2135 (Nov. 25, 2002), 6 U.S.C. § 291.

oral ruling, the Immigration Judge pretermitted his application, finding that AEDPA § 440(d) barred him from applying. The Board of Immigration Appeals affirmed the Immigration Judge's ruling, citing AEDPA § 440(d) and IIRIRA's specific repeal of § 212(c). Mr. Sandoval appealed the BIA's decision, but the Fifth Circuit dismissed for lack of jurisdiction based on IIRIRA's jurisdiction-stripping provisions. *See* 8 U.S.C. § 1252(a)(2)(C). The INS removed him to El Salvador on July 30, 1999.

Mr. Sandoval returned to the United States in 2002, crossing the U.S.-Mexico border without inspection. Federal authorities discovered Mr. Sandoval in the Cache County Jail in Logan, Utah on September 16, 2002, and charged him with illegal reentry by a removed alien in violation of 8 U.S.C. § 1326. After extensive questioning by the district court, he entered a guilty plea on January 3, 2003. As part of his plea agreement, he acknowledged that his decision to plead guilty was made knowingly, voluntarily, and with the advice of counsel. He also agreed not to collaterally attack his prior order of removal.

At the beginning of his sentencing hearing on April 24, 2003, Mr. Sandoval submitted a Motion to Withdraw his guilty plea. He argued that his counsel failed to inform him of his right to collaterally attack the underlying removal order. The district court continued the sentencing hearing and requested briefing from both parties. In support of his motion, he argued that the Immigration Judge's refusal

6

to allow him to seek discretionary relief from removal under § 212(c) violated his right to a fair hearing, permitting him to collaterally attack the proceedings under 8 U.S.C. § 1326(d).

The district court denied Mr. Sandoval's motion. The court recognized that *INS v. St. Cyr*, 533 U.S. 289 (2001), preserved the right to apply for discretionary relief for a certain class of deportable aliens. It held, however, that the residual right recognized by *St. Cyr* was limited to aliens who were eligible to apply for § 212(c) relief on the date of their plea. Because Mr. Sandoval had not yet accumulated seven years of lawful permanent residence, he was not eligible to apply for relief on the date of his plea. The district court therefore found that his right to apply for discretionary relief did not survive AEDPA and IIRIRA and that he failed to present a fair and just reason for withdrawal of his plea. At the sentencing hearing on June 24, 2003, the court sentenced Mr. Sandoval to 70 months imprisonment and 36 months supervised release. He now appeals the denial of his Motion to Withdraw.

## II.

We review the district court's denial of the Motion to Withdraw for abuse of discretion. *See United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir. 2000). The district court's ruling on the alleged due process defects in the underlying immigration proceeding is a mixed question of law and fact subject to de novo

7

review.  *See United States v. Rangel DeAguilar*, 308 F.3d 1134, 1137 (10th Cir. 2002).

III.

A.

Although a defendant does not have an absolute right to withdraw a guilty plea, *see, e.g.*, *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir. 1978), the court should view a motion to withdraw with favor, granting the defendant "a great deal of latitude." *United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir. 1990) (quoting *United States v. Hickok*, 907 F.2d 983, 986 (10th Cir. 1990)).  The ultimate decision lies within the trial court's discretion, however, and we will not reverse unless the trial court acted "unjustly or unfairly." *Siedlik*, 231 F.3d at 748 (quoting *United States v. Kramer*, 168 F.3d 1196, 1202 (10th Cir. 1999)).

After the court accepts a plea, but before it imposes a sentence, the defendant may withdraw a plea of guilty if he shows a "fair and just reason for the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  This Court determines whether the defendant has shown a fair and just reason for withdrawal with reference to the following factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7)

8

whether the withdrawal would waste judicial resources.
*Rhodes*, 913 F.2d at 845 (quoting *Hickok*, 907 F.2d at 985 n.2).  Mr. Sandoval

maintains that his collateral attack on the prior removal proceeding constitutes a

fair and just reason for withdrawal of his guilty plea.

The Government maintains that Mr. Sandoval fails to present a fair and just

reason for withdrawal of his plea regardless of his right to collaterally attack the

removal proceeding.  The Government argues that he knowingly and voluntarily

entered his plea while represented by counsel, that he agreed not to collaterally

attack his order of removal, and that his delayed attempt to withdraw the plea

caused inconvenience to the court and to the government.  Most importantly, the

government argues, Mr. Sandoval does not assert his innocence; he acknowledges

that he returned to the United States after removal without the permission of the

Attorney General.

Whether the district court abused its discretion by denying Mr. Sandoval's

motion to withdraw his guilty plea depends upon the outcome of his collateral

attack on the underlying removal proceedings.  Although he does not label it a

claim of innocence, his collateral attack is a similar assertion.  If he shows that

his removal hearing violated his due process rights, he cannot be lawfully

convicted of illegal reentry.  With respect to the government's claims of

inconvenience, a successful defense necessarily results in some amount of lost

9

time.  But Mr. Sandoval's attempt to withdraw his plea is not a delay tactic or an attempt to avoid a harsh sentence.  *Cf. United States v. Elias*, 937 F.2d 1514, 1520 (10th Cir. 1991) ("A defendant's dissatisfaction with the length of his sentence generally is insufficient reason to withdraw a plea.").  He does not merely seek a better deal from the government, and he moved to withdraw his plea before sentencing.  His due process challenge to the deportation proceeding underlying the charge against him, if valid, qualifies as a fair and just reason for withdrawal.

B.

An alien who enters the United States after his removal for the commission of an aggravated felony commits a criminal offense punishable by up to twenty years of imprisonment.  8 U.S.C. § 1326(b)(2).  Congress has imposed specific limitations on an alien's right to collaterally attack the deportation order underlying a charge of illegal reentry.  To succeed in a collateral attack, an alien must show that:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

10

*Id.* § 1326(d).[3]  To show that the underlying proceeding was fundamentally unfair, Mr. Sandoval must show that he was prejudiced.  *See United States v. Aranda-Hernandez*, 95 F.3d 977, 980 (10th Cir. 1996).

The Government concedes that Mr. Sandoval exhausted his administrative remedies, but it maintains that the Immigration Judge correctly denied his application because AEDPA and IIRIRA eliminated his right to apply for discretionary relief.  Even if he retained the right to apply, the Government maintains that the right was not protected by due process; therefore, the Immigration Judge's denial of his attempt to apply for discretionary relief could not render the proceedings fundamentally unfair.  Finally, the Government contends that the Immigration Judge's denial of his application did not prejudice Mr. Sandoval because there was no reasonable likelihood of relief.  Because we agree with the government that Mr. Sandoval cannot show prejudice, we conclude that his collateral attack on the deportation proceeding must fail, and we need not reach the other issues raised.

The defendant bears the burden of proving prejudice.  *United States v.*

---

[3]  Congress passed § 1326(d) in response to *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987), which held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding."  We have held that § 1396(d) is consistent with the constitutional standard announced in *Mendoza-Lopez*.  *United States v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998).

*Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004) (en banc). In *Aguirre-Tello*, we held that in order to demonstrate prejudice, an alien must show a "reasonable likelihood that, but for the errors complained of, he would not have been deported." *Id.* at 1208 (quoting *United States v. Calderon-Pena*, 339 F.3d 320, 324 (5th Cir. 2003)). The collateral attack in *Aguirre-Tello* was based on the Immigration Judge's failure to advise an alien of his right to apply for discretionary relief. We held that, even if Mr. Aguirre-Tello had a constitutional right to be informed of his eligibility for discretionary relief, he failed to show prejudice. *See Aguirre-Tello*, 353 F.3d at 1210.

We based our decision in *Aguirre-Tello* on two findings. First, we found no reasonable likelihood that the defendant would have applied for a waiver even if the Immigration Judge had explained his rights flawlessly. *Id.* at 1209. Second, we held that the defendant failed to show a reasonable likelihood that the waiver would have been granted had he applied. The defendant presented some favorable circumstances: his parents were legal permanent residents, he had lived in the United States since he was four (though legally only since he was seventeen or eighteen), and he had no prior criminal record. Considering the fact that he had recently been convicted of attempted murder, however, we found no reasonable likelihood that the Attorney General would have selected the defendant for relief from among the large number of eligible aliens. *Id.*

12

The Fifth Circuit reached a similar conclusion in *United States v. Mendoza-Mata*, 322 F.3d 829 (5th Cir. 2003). Mr. Mendoza-Mata pleaded guilty to a charge of illegal reentry by a removed alien. *Id.* After he entered his guilty plea, but before his sentencing hearing, the Supreme Court decided *INS v. St. Cyr*, 533 U.S. 289 (2001). Mr. Mendoza-Mata moved to withdraw his guilty plea and dismiss the indictment, arguing that the Immigration Judge's denial of his application for discretionary relief rendered the removal proceeding fundamentally unfair. The district court denied his motion.

The Fifth Circuit affirmed, finding that Mr. Mendoza-Mata failed to establish prejudice under the reasonable likelihood standard. Mr. Mendoza-Mata argued that his long presence in the United States and his parents' status as lawful permanent residents made it likely that the Attorney General would have granted him relief from deportation. He also relied on *St. Cyr*'s statement that a substantial percentage of aliens received discretionary relief. *Id.* at 833 (citing *St. Cyr*, 533 U.S. at 296). The Government argued that Mendoza-Mata's substantial criminal record—convictions for cocaine possession, criminal trespass, indecent exposure, theft, and driving with a suspended license, as well as charges of child recklessness and criminal mischief—would have precluded relief. *Id.* Based on his extensive criminal history, the court found no reasonable likelihood that Mendoza-Mata would have been granted relief. Because he could not show

13

prejudice, his collateral attack failed. *Id.* at 834.

We also look to the factors developed by the BIA to determine whether a deportable alien was entitled to § 212(c) relief. These included the gravity of the offense, evidence of rehabilitation or recidivism, duration of residence, family ties in the United States, service in the armed forces, and evidence of bad character. *See St. Cyr*, 533 U.S. at 296 n.5; *Matter of Marin*, 16 I & N Dec. 581 (1978) (listing as adverse factors "the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country").

Mr. Sandoval argues that the equitable and humanitarian factors in his case outweigh the negative factors, raising a reasonable likelihood that the Attorney General would have granted him relief from deportation had he been permitted to apply. We disagree. Mr. Sandoval presents some positive factors. His son and common-law wife are both permanent residents of the United States, and he contributed to their support while he was a resident, at least during the time he was able to work. But the negative factors are substantial. During his time in the United States, Mr. Sandoval committed two burglaries, one theft, and at least three DWIs.[4] Although these individual crimes are not as serious as Mr. Aguirre-

---

[4] In his statement of facts to the district court and his opening brief on
(continued...)

14

Tello's attempted murder, he had compiled this extensive criminal record in approximately six years of residence.

Mr. Sandoval argues that a "substantial percentage" of applications for relief—51.5%, to be precise—were granted between 1989 and 1995. *See St. Cyr*, 533 U.S. at 296 n.5. The district court in *Aguirre-Tello* relied upon similar statistics, but we noted these percentages failed to show "what proportion of those successful waiver applicants were convicted of serious violent felonies . . . . Without any indication that the successful applicants were similarly situated . . . the conclusion that he had at least a 50% chance of receiving a discretionary waiver is pure speculation, if not actually misleading." *Aguirre-Tello*, 353 F.3d at 1210. Like Mr. Aguirre-Tello, Mr. Sandoval fails to provide any indication of the likelihood of relief for aliens with similar criminal histories.

Even if we were to accept Mr. Sandoval's statistics, he must show some reason why he would have ranked among the slight preponderance of aliens who secured discretionary relief. Given the sheer number of Mr. Sandoval's convictions, as well as the evident pattern of DWI and property offenses, we find it extremely difficult to believe that Mr. Sandoval's family connections would

---

[4](...continued)
appeal, Mr. Sandoval states that he had been convicted of three DWI offenses at the time of his removal hearing. Opening Brief 4; R. Supp. Vol. I, Doc. 24, 2. The Government claims that Mr. Sandoval was convicted of five DWI offenses between 1989 and 1995. Appellee's Brief 2 n.1.

have outweighed his criminal record. Mr. Sandoval was not reasonably likely to receive a discretionary waiver of deportation.

With respect to the prejudice issue, Mr. Sandoval requests that we remand the case for an evidentiary hearing. Generally speaking, an evidentiary hearing is not required unless the requesting party shows that he will produce relevant evidence. For example, a motion to suppress "must raise factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are an issue." *United States v. Barajas-Chavez*, 358 F.3d 1263, 1266 (10th Cir. 2004) (quoting *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995) (internal quotations omitted)). Similarly, when the reliability of scientific evidence is disputed, we have held that the district court "must hold an evidentiary hearing unless the proffer on its face is insufficient to raise a material issue of fact." *United States v. Call*, 129 F.3d 1402, 1407 (10th Cir. 1997) (citing *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)). Mr. Sandoval made a proffer of evidence to the district court in support of his prejudice argument. Because we accept Mr. Sandoval's proffered facts as true, there is no need for an evidentiary hearing.[5]

---

[5]Mr. Sandoval's proffer consisted largely of evidence related to his eligibility for discretionary relief, not the likelihood that it would be granted. This opinion recounts the elements of his proffer that are relevant to the issue of prejudice.

IV.

Because it is not reasonably likely that the Attorney General would have granted Mr. Sandoval's request for a waiver of deportation, he cannot show that the Immigration Judge's alleged error caused prejudice. Because the collateral attack on his deportation must fail, he does not present a fair and just reason for the withdrawal of his guilty plea, and the district court did not abuse its discretion in denying his motion to withdraw his plea. We therefore AFFIRM.