**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 04-4201 |
| v. | (D. Utah) |
| RAMON ROBLES, | (D.C. No. 2:03-CR-00478-DKW) |
| Defendant-Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In May 2004, Ramon Robles pleaded guilty to possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and using or carrying a firearm during and in relation to a federal drug trafficking

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

crime, in violation of 18 U.S.C. § 924(c). As part of the plea, he agreed to waive his rights to appeal a sentence imposed within the statutory maximum. At sentencing, he requested to withdraw his plea, but the district court denied the request. On appeal, Mr. Robles challenges the district court's denial of his oral motion to withdraw his guilty plea. He also argues that his case should be remanded, in light of *United States v. Booker*, 125 S. Ct. 738 (2005), for resentencing despite the appellate waiver. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that (1) the district court did not abuse its discretion in denying his motion to withdraw his guilty plea, and (2) his plea agreement waived his right to bring a *Booker* appeal. For the reasons stated below, we affirm Mr. Robles's conviction and sentence.

## I. BACKGROUND

In June 2003, officers stopped a vehicle in which Mr. Robles was riding in Beaver County, Utah. Officers searched the car and found three packages containing methamphetamine and a Ruger nine-millimeter handgun. On May 8, 2004, Mr. Robles executed a Statement By Defendant In Advance of Plea of Guilty. He stipulated that he "knew the drugs and gun were there [in the car], that [he] was taking the drugs to another person, and that [he] was carrying the gun during and in connection with the drug offense." Rec. vol. I, doc. 60, at 4 ¶

12(a). He also agreed "that the amount of methamphetamine involved in the offense to which [he was] pleading guilty is 1,335 grams of a mixture or substance containing methamphetamine, approximately 97% to 98% pure, for a total of 1,273.5 grams actual methamphetamine." *Id.* at 5 ¶ 13(b). As part of the plea agreement, the government agreed not to file an information under 21 U.S.C. § 851, which would have subjected him to a mandatory term of life imprisonment. *Id.* at 6 ¶ 13(f).

In the plea agreement, Mr. Robles also agreed to the following waiver of appeal:

> I know and understand that if the Court imposes a lawful sentence based on my plea of guilty, ordinarily I would have no right to appeal the sentence and neither would the government.
>
> (a)   I understand, however, that 18 U.S.C. § 3742 affords a defendant certain rights regarding the appeal of a sentence imposed pursuant to the United States Sentencing Guidelines. Those rights have been explained to me and I understand them.
>
> (b)   Acknowledging this, I knowingly, voluntarily and expressly waive my right to appeal any sentence imposed on me that is within the maximum provided by the statutes of conviction, as well as the right to appeal or challenge the manner in which that sentence is determined on the grounds set forth in 18 U.S.C. § 3742 or on any other ground, except I do not waive my right to appeal any upward departure from the sentencing guideline[s] range used by the Court.
>
> . . . .
>
> (e)   I understand and agree that the word "sentence" appearing throughout the waiver provision is being used broadly, and the

word applies to all aspects of the court's sentencing authority, including but not limited to–

(i)      Sentencing Guidelines rulings and determinations;

(ii)     the imposition of imprisonment, fines, supervised release, probation, and any specific terms or conditions of any of the foregoing; and

(iii)    any order of restitution or forfeiture.

*Id.* at 3-4 ¶ 8.

Mr. Robles also certified that "[n]o threats or promises of any sort" induced his plea agreement, he was "satisfied with [his] lawyer," and his plea was made "after full and careful thought, with the advice of counsel, and with a full understanding of [his] rights, the facts and circumstances of the case and the consequences of the plea." *Id.* at 7.

During the plea hearing, the district court informed Mr. Robles that, if he pleaded guilty, there would not be a trial and he could not appeal unless the district court imposed an unlawful sentence or a sentence not authorized by the Guidelines. Rec. vol. II, at 6 (Change of Plea Hr'g, dated May 12, 2004). The district court also informed Mr. Robles that the maximum penalty for his offenses was life in prison, with a mandatory minimum of ten years on the methamphetamine count and a consecutive five-year mandatory minimum on the firearm count. *Id.* at 6-8. After reviewing the terms of the plea agreement with Mr. Robles, the court accepted his plea and stated:

Based on your answers to my questions and having signed the statement, based on having observed you, I find that your plea of guilty

has been freely and voluntarily made, and that you're in fact guilty of the charges to which you have pled guilty, and that you have had the full benefit of very competent legal advice in entering the plea. I find that you're mentally competent to enter the plea.

*Id.* at 18.

Prior to sentencing, the pre-sentence report ("PSR") recommended a base offense level of 36 because the offense involved at least 500 grams but less than 1.5 kilograms of actual methamphetamine. *See* U.S.S.G. § 2D1.1(c)(2). The PSR recommended a one-level upward adjustment because Mr. Robles was a career offender, *see* U.S.S.G. § 4B1.1, and a two-level downward adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1. Mr. Robles objected to the PSR, arguing that *Blakely v. Washington*, 542 U.S. 296 (2004) prohibits sentencing enhancements over the statutory minimums. At sentencing, the government agreed to recommend a third-level downward adjustment for acceptance of responsibility, which lowered the adjusted offense level to 34. With the adjusted offense level of 34 and a criminal history category VI, the Guidelines range was 322 to 387 months' imprisonment, which included a 60-month consecutive mandatory minimum sentence on the firearm count.

After the district court expressed its intent to impose an imprisonment of 322 months, Mr. Robles moved to withdraw his plea. His counsel stated:

Your Honor, Mr. Robles has informed me that regardless of the fact that he could be looking at a life sentence that he would like to withdraw his plea today. He bases that on confusion at the time of his plea, and he

-5-

states that he was confused and things went too quickly for him. After thinking about it, 26 years is too long and he would like to withdraw his plea.

Rec. vol. III, at 6 (Sentencing Hr'g, dated Aug. 25, 2004).

The district court judge declined to allow Mr. Robles to withdraw the plea: "I think he has had every opportunity both with you and [his initial counsel] to be appraised of things, so I am going to go ahead with the sentence." *Id.* Mr. Robles later stated that "I would like for you to give me the opportunity to go to trial and to be able to appeal . . . . There were a lot of things I didn't understand. I accepted a lot of things that I didn't understand." *Id.* at 7-8. The district court sentenced Mr. Robles to 322 months' imprisonment, at the low end of the Guidelines range.

## II. DISCUSSION

Mr. Robles appeals the district court's denial of his motion to withdraw his guilty plea, and contends that his case should be remanded for a new sentencing hearing in light of *Booker*. We reject both challenges.

A.     Denial of Mr. Robles's motion to withdraw his plea

Mr. Robles maintains that the district court should have granted his motion to withdraw his plea because "things had gone too quickly at the change of plea hearing and . . . he was confused" at sentencing. Aplt's Br. at 14. He further

contends that "[t]he district court did not fully inquire into why or what it was that Mr. Robles did not understand at the time of his plea." *Id.* We review the denial of a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Sandoval*, 390 F.3d 1294, 1297 (10th Cir. 2004).

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a "defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." "[T]he burden of demonstrating a 'fair and just reason' rests with the defendant." *United States v. Kramer*, 168 F.3d 1196, 1202 (10th Cir. 1999). We have previously identified several factors to consider when determining whether a defendant has shown a "fair and just reason" to allow the withdrawal of a plea: (1) whether the defendant has asserted his innocence; (2) prejudice to the government if the motion is granted; (3) the defendant's delay in filing the withdrawal motion; (4) whether the court is inconvenienced if the motion is granted; (5) defendant's assistance of counsel; (6) whether the plea was made knowingly and voluntarily; and (7) the waste of judicial resources. *United States v. Carr*, 80 F.3d 413, 420 (10th Cir. 1996).

None of these factors supports Mr. Robles's appeal. At no time has he claimed that he is innocent of the offense, and he did not request the oral motion to withdraw his plea until after the district court expressed its sentencing

intention. Withdrawal of the plea would require additional prosecutorial and judicial resources to conduct another plea hearing, sentencing hearing, or trial. As to the fifth factor, Mr. Robles does not assert a claim of ineffective assistance of counsel. Finally, as we discuss below, the language of the plea agreement demonstrates that Mr. Robles entered a knowing and voluntary plea, and the district court adequately complied with Rule 11 requirements in the plea colloquy.

Accordingly, the district court did not abuse its discretion when it denied Mr. Robles's oral request to withdraw his plea of guilty.

B.      Appeal for a remand and new sentencing hearing

Mr. Robles argues that he did not knowingly and voluntarily waive his right to be sentenced lawfully, and his case should be remanded for resentencing. According to Mr. Robles, he could not have waived his right to be lawfully sentenced because he could not have known, when he executed the waiver, that the Supreme Court in *Booker* would later invalidate the Guidelines as a mandatory scheme. Aplt's Br. at 8.

This circuit "generally enforce[s] plea agreements and their concomitant waivers of appellate rights." *United States v. Hahn*, 359 F.3d 1315, 1318 (10th Cir. 2004) (en banc). In considering how to resolve appeals brought by defendants who have waived certain appellate rights in a plea agreement, we must determine (1) if an appeal falls within the scope of the appellate waiver; (2)

whether the defendant's waiver of appellate rights was knowing and voluntary; and (3) whether enforcement of the appellate waiver would result in a miscarriage of justice. *Id.* at 1325.

1.  *Scope of the appellate waiver*

The language of Mr. Robles's plea agreement clearly encompasses his appeal. Under the waiver, he "knowingly, voluntarily, and expressly waive[d] [his] right to appeal any sentence imposed on [him] within the maximum provided by the statutes of conviction, as well as the right to appeal or challenge the manner in which that sentence is determined." Rec. vol. I, doc. 60, at 3 ¶ 8(b). The waiver contained only one exception: the right to appeal "any upward departure from the sentencing guideline range used by the court." *Id.* Mr. Robles's claim on appeal does not fall within that one exception. In addition, the district court's sentence of 322 months falls within the "statutory maximum" of life imprisonment under 21 U.S.C. § 841(b)(1)(A). *See United States v. Green*, 405 F.3d 1180, 1194 (10th Cir. 2005) (concluding that the term "statutory maximum," in a plea agreement permitting an appeal in the limited circumstance of a sentence exceeding the statutory maximum, refers to the maximum penalty for the statute of conviction).

2.  *Knowing and voluntary waiver*

In determining whether a defendant's waiver of his right to appeal is made knowingly and voluntarily, we consider (1) "whether the language of the plea

agreement states that the defendant entered the agreement knowingly and voluntarily," and (2) whether there is "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325. The defendant bears the "burden to present evidence from the record establishing that he did not understand the waiver." *Id.* at 1329 (quoting *United States v. Edgar*, 348 F.3d 867, 872-73 (10th Cir. 2003)).

Mr. Robles contends that we should review the waiver within the temporal context of its execution, because at that time he could not have known that the Supreme Court would later rule the Guidelines are only advisory. We are not persuaded. "The Supreme Court has made it clear that a defendant's decision to give up some of his rights in connection with making a plea–including the right to appeal from the judgment entered following that plea–remains voluntary and intelligent or knowing despite subsequent developments in the law." *Green*, 405 F.3d at 1190.

When executing the plea agreement, Mr. Robles recognized the circumstances under which he could appeal his sentence. He then "knowingly, voluntarily, and expressly waive[d] [his] right to appeal any sentence" that was within the statutory maximum, and he waived his right to appeal the "manner in which that sentence is determined on the grounds set forth in 18 U.S.C. § 3742 or on any other ground," provided the court did not grant an upward departure. Rec. vol. I, doc. 60, at 3 ¶ 8(b).

At the subsequent Rule 11 plea colloquy, Mr. Robles stated that he understood the charges, the factual basis for the plea, and the resulting penalty. Rec. vol. II, at 5-7, 15-18. He further informed the district court that he had discussed the plea with his attorney and was satisfied with his attorney. *Id.* at 4-5, 15. In light of these express acknowledgments, the district court found that Mr. Robles "knowingly and voluntarily made the [appeal] waiver" with the "full benefit of very competent legal advice." *Id.* at 10, 18.

Based on the express language of the plea agreement and his reaffirmation of the plea agreement's provisions during the Rule 11 colloquy, we conclude that Mr. Robles knowingly and voluntarily waived his rights to appeal his sentence. He has not satisfied his burden of showing evidence that he did not understand the waiver.

3.  *Miscarriage of justice*

Finally, we consider whether enforcement of Mr. Robles's waiver would result in a miscarriage of justice. He claims "that the district court committed a constitutional *Booker* error by sentencing him in a mandatory fashion and that sentencing him under the mandatory guidelines was not within the scope of the appeal waiver." Aplt's Reply Br. at 6. Further, he argues that a post-Booker sentencing court could consider factors under 18 U.S.C. § 3553(a) not addressed by the PSR. *Id.*

"[E]nforcement of an appellate waiver does not result in a miscarriage of justice unless enforcement would result in one of . . . four situations . . . ." *Hahn*, 359 F.3d at 1327. Those circumstances include (1) "the district court's reli[ance] on an impermissible factor such as race;" (2) "ineffective assistance of counsel in connection with the negotiation of the [appellate] waiver;" (3) "where the sentence exceeds the statutory maximum;" or (4) "where the error is otherwise unlawful." *Id.* (quoting *United States v. Elliott*, 264 F.3d 1171, 1173 (10th Cir. 2001)). For Mr. Robles to satisfy the fourth circumstance, the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732 (1993); *Hahn*, 359 F.3d at 1327.

Mr. Robles offers no arguments under the first two situations. As to the third exception, the sentence imposed by the district court did not exceed the statutory maximum of life imprisonment. *See Green*, 405 F.3d at 1194.

Further, Mr. Robles cannot show that the waiver is otherwise unlawful and seriously affects the fairness, integrity, or public reputation of judicial proceedings. His arguments regarding this factor are foreclosed by our recent holding in *United States v. Porter*, 405 F.3d 1136 (10th Cir. 2005). The defendant in *Porter* executed a plea agreement, prior to the Supreme Court's holding in *Booker*, that limited his rights to appeal his sentence. In *Porter*, "we [found] the change *Booker* rendered in the sentencing landscape does not compel

-12-

us to hold [the defendant's] plea agreement unlawful." *Id.* at 1145. "To allow defendants or the government to routinely invalidate plea agreements based on subsequent changes in the law would decrease the prospects of reaching an agreement in the first place, an undesirable outcome given the importance of plea bargaining to the criminal justice system." *Id.*

Therefore, we enforce Mr. Robles's appeal waiver to his claim of *Booker* error because (1) the appeal falls within the scope of the waiver provision, (2) he knowingly and voluntarily waived his appellate rights, and (3) enforcement of the waiver does not result in a miscarriage of justice.

## III. CONCLUSION

We AFFIRM Mr. Robles's conviction and the district court's denial of his motion to withdraw his plea. We also enforce his waiver of appeal and DISMISS his sentencing challenge insofar as he claims error under *Booker*.

Entered for the Court,

Robert H. Henry
Circuit Judge