**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 6 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DARVELL SHERROD GREEN,

    Defendant - Appellant.

No. 04-5105

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 04-CR-21-02-EA)**[*]

---

F.L. Dunn, III, Tulsa, Oklahoma, for Defendant-Appellant.

Timothy L. Faerber, United States Attorney's Office for the Northern District of Oklahoma, Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **EBEL**, **MCKAY** and **HENRY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In this direct criminal appeal, we hold that the district court did not have jurisdiction under Fed. R. Crim. P. 35(a) to resentence Defendant more than seven days after the court orally imposed an earlier sentence. We also conclude that Defendant's waiver of his appellate rights—made before the Supreme Court issued its opinion in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004)—is enforceable and bars our consideration of any claims he may assert under <u>United States v. Booker</u>, 125 S. Ct. 738 (2005).

Defendant pled guilty to interfering with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). The district court sentenced him to fifty-one months' imprisonment on the former count, and eighty-four months' imprisonment on the latter count. More than seven days later, the district court sua sponte opted to resentence Defendant to forty-one months' imprisonment on the former count, with all other terms of the new sentence identical to those of the original. Defendant timely appealed, and defense counsel filed an <u>Anders</u> brief and moved to withdraw as counsel. <u>See</u> <u>Anders v. California</u>, 386 U.S. 738, 744 (1967).

We exercise jurisdiction over his appeal pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. Our <u>Anders</u> review of the proceedings reveals no error in Defendant's conviction, and we accordingly AFFIRM that conviction. However,

because the district court lacked jurisdiction to resentence Defendant, and Defendant's waiver of his appellate rights encompassed all arguments against his original sentence revealed by our <u>Anders</u> review, we REMAND with instructions that the district court vacate Defendant's later sentence and reinstate Defendant's original sentence.

I.      **Background**

Defendant's plea agreement provided that "Defendant agrees to waive all appellate rights except those relating to issues raised by the Defendant and denied by the District Court regarding the application of the Sentencing Guidelines." Similarly, Defendant's "Petition to Enter Pleas of Guilty" states, "I have agreed to waive all rights to appeal . . . save and except those rights of appeal relating to issues raised by me and denied by the Court regarding the application of the Sentencing Guidelines."

At Defendant's guilty plea hearing, the prosecutor described the plea agreement for the record, stating, "There is . . . [an] appellate's [sic] right waiver, a limited one, that essentially waives all appellate rights with the exception of those issues regarding application to sentencing guidelines that are objected to and overruled by the Court." Later in the plea hearing, the district court asked Defendant:

> Do you understand that in your plea agreement there is a limited waiver of appellate rights? . . . Do you understand that under that

waiver, you agree to waive all appellate rights except for issues raised by you and denied by me regarding application of the sentencing guidelines and also any claims . . . ?

Defendant stated that he understood both questions.

The district court orally sentenced Defendant on June 24, 2004. However, the district court judge never signed a written version of the judgment, and therefore the court never entered this judgment onto its docket.

The same day that the district court orally sentenced Defendant, the Supreme Court issued its opinion in Blakely. On June 30, 2004, Defendant submitted a Motion to Correct Sentence pursuant to Fed. R. Crim. P. 35(a),[1] alleging that the sentence "was the result of clear error" because

> the sentencing court factually determined and applied a guideline sentencing enhancement pursuant to USSG § 2B3.1(b)(2)(F), i.e. a threat of death was made during the commission of the robbery, which fact caused an increase in the defendant's sentence but which had not been alleged in the Indictment, proven beyond a reasonable doubt, nor stipulated to by defendant in the Plea Agreement nor at the time he entered his plea of guilty.

On July 6, 2004, the district court scheduled a hearing on Defendant's Rule 35(a) motion for July 9. At that hearing, the court found that Defendant had stipulated to the facts necessary for the threat of death adjustment. However, after making this finding, the court opted to resentence Defendant without

---

[1]Fed. R. Crim. P. 35(a) provides, "Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."

applying the adjustment. The court determined that because the threat of death adjustment in U.S.S.G. § 2B3.1(b)(2) was part of a list of adjustments that addressed possessing, brandishing, using, or discharging a firearm, the threat of death adjustment was a weapons enhancement that should not be applied in conjunction with a sentence under 18 U.S.C. § 924(c). See U.S.S.G. § 2K2.4, comment. n.4.

Accordingly, the court found that it had made an error in including the threat of death adjustment in Defendant's June 24 sentence, and stated:

> The Court denies the defendant's motion to correct the sentence under Blakely. The court, sua sponte, based upon its desire to prevent a manifest injustice, hereby vacates its sentence pronounced on June 24th, 2004, and we come now for resentencing . . . .

The court resentenced defendant to forty-one months' imprisonment on the robbery count and to the mandatory eighty-four months' imprisonment on the firearms count. Thus, Defendant's July 9 sentence is ten months shorter than his June 24 sentence. Following the July 9 sentencing, the judgment in this case was entered on the district court's docket on July 16, 2004.

## II. Analysis

### A. The District Court's Jurisdiction to Resentence Defendant

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist., 475 U.S.

534, 541 (1986). "For that reason, every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." Id. (quotations omitted). In general, we must address questions pertaining to our or a lower court's jurisdiction before proceeding to the merits. See Tenet v. Doe, 125 S. Ct. 1230, 1235 n.4 (2005).[2] Accordingly, we begin by analyzing the district court's jurisdiction to resentence Defendant on July 9, 2004.

"A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so," so "[a] district court does not have inherent power to resentence defendants at any time." United States v. Blackwell, 81 F.3d 945, 947, 949 (10th Cir. 1996) (quotations omitted). Thus, in the case at bar the district court lacked jurisdiction to resentence Defendant based upon its "desire to prevent a manifest injustice."

The district court also did not have jurisdiction to resentence Defendant under any statutory provision. 18 U.S.C. § 3582(c) provides only three

---

[2]Tenet describes certain threshold questions that may be resolved before addressing jurisdiction. 125 S. Ct. at 1235 n.4. However, those threshold questions are different from determining the enforceability of an appellate rights waiver, as the resolution of those questions may result in the dismissal of a case from a federal court altogether—not merely the dismissal of an appeal. Thus, we must address the jurisdictional issue in this case before examining Defendant's waiver of his appellate rights.

jurisdictional grants under which a court may "modify a term of imprisonment once it has been imposed."[3] A court may modify a sentence: (1) in certain circumstances "upon motion of the Director of the Bureau of Prisons"; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure"; or (3) in cases where the applicable sentencing range "has subsequently been lowered by the Sentencing Commission." Id. at § 3582(c)(1)(A), (c)(1)(B), (c)(2). Avenues one and three are inapposite to the resentencing that the district court performed in the instant case. Avenue two offers Fed. R. Crim. P. 35 as the only potential source of authority to support the district court's modification of Defendant's sentence.

Fed. R. Crim. P. 35 empowers a court to correct or reduce a Defendant's sentence in two specified instances. Section (a) provides that "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."[4] Fed. R. Crim. P. 35(a) (emphasis added). Section (b) grants a court authority to reduce a sentence to reflect a defendant's

---

[3]Of course, a district court may also modify a defendant's sentence following a remand from the Court of Appeals, see 18 U.S.C. § 3742(g), or to correct clerical errors. See Fed. R. Crim. P. 36. Neither provision is at issue in this case.

[4]In 2002, amendments to Rule 35 moved the substantive provisions of what had been Rule 35(c) to what is now Rule 35(a). Fed. R. Crim. P. 35, Advisory Committee Notes on 2002 Amendment. Thus, our earlier decisions addressing the former Rule 35(c) are applicable in construing the current Rule 35(a).

post-sentencing substantial assistance.  Fed. R. Crim. P. 35(b).  Section (b) is inapposite to the instant case.  Thus, the dispositive question in determining whether the district court had jurisdiction to resentence Defendant is whether Fed. R. Crim. P. 35(a) divests a district court of jurisdiction to correct sentencing errors more than seven days after sentencing.  The history of the rule and case law interpreting the provision make clear that Rule 35(a) provides a district court with jurisdiction to correct sentencing errors for only seven days after the court first orally sentenced a defendant.

Before the Sentencing Reform Act of 1984 became effective, Rule 35 allowed a district court to "correct an illegal sentence at any time" and to "correct a sentence imposed in an illegal manner" within 120 days of certain triggers.  See Fed. R. Crim. P. 35, Rule Applicable to Offenses Committed Prior to Nov. 1, 1987.  The Sentencing Reform Act deleted these provisions, however, such that "the only circumstances in which a sentence could then be reduced were on remand after appeal or upon motion of the government to recognize a defendant's cooperation."  Wright, King & Klein, Federal Practice and Procedure: Criminal 3d § 581; see United States v. Shank, 395 F.3d 466, 468 (4th Cir. 2005), petition for cert. filed, (U.S. Apr. 25, 2005) (No. 04-1436).

In 1991, Rule 35 was amended to provide sentencing courts with a seven-day period in which to correct arithmetical, technical, or other clear error.  Fed.

R. Crim. P. 35, Advisory Committee Notes on 1991 Amendments.  "The authority

to correct a sentence under this subdivision [wa]s intended to be very narrow and

to extend only to those cases in which an obvious error or mistake ha[d] occurred

. . . ."  Id.  "The subdivision [wa]s not intended to afford the court the opportunity

to reconsider the application or interpretation of the sentencing guidelines or for

the court simply to change its mind about the appropriateness of the sentence."

Id.  "Nor should it be used to reopen issues previously resolved at the sentencing

hearing through the exercise of the court's discretion with regard to the

application of the sentencing guidelines."  Id.[5]

        We have held that, for purposes of Rule 35, "sentence is imposed upon a

criminal defendant . . . when the [district] court orally pronounces sentence from

the bench."[6]  United States v. Townsend, 33 F.3d 1230, 1231 (10th Cir. 1994).

Thus, a court may act pursuant to Rule 35(a) to correct a sentence only within

seven days of orally pronouncing sentence.  We have held that this seven-day time

limit is jurisdictional.  See Blackwell, 81 F.3d at 948 & n.4; see also Townsend,

33 F.3d at 1231 ("[Defendant] was sentenced on August 13, 1993 . . . .  Thus, the

---

        [5]While the wording of the current Rule 35(a) is slightly different from the wording of the 1991 Rule 35(c), "[n]o change in practice [wa]s intended" by the slight change in wording.  Fed. R. Crim. P. 35, Advisory Committee Notes on 2002 Amendments.

        [6]An amendment to Rule 35 effective in December 2004 incorporates this notion, though the amendment is not applicable to this case because the case involves sentencing proceedings from mid-2004.

district court had jurisdiction to correct [Defendant]'s sentence for clerical or technical errors until August 20, 1993.").

In this case, the district court orally pronounced Defendant's original sentence on June 24, 2004. Defendant filed his Rule 35(a) motion on June 30, 2004. On July 6, 2004, the district court scheduled a hearing on that motion. At the hearing, which was held on July 9, 2004, the court denied Defendant's motion, but then sua sponte resentenced Defendant to the lower sentence.

Thus, in this case the district court scheduled a hearing on Defendant's motion to correct the original sentence within the seven-day period mandated by Rule 35(a). Though twelve calendar days elapsed between the original sentencing hearing and the district court's scheduling of a hearing on Defendant's motion, only seven days passed during that time for purposes of Rule 35(a). This is because Fed. R. Crim. P. 45 provides that if the period of time specified in a Federal Rule of Criminal Procedure is less than eleven days, intermediate Saturdays, Sundays, and legal holidays should be excluded. Fed. R. Crim. P. 45(a)(2). Therefore, for purposes of Rule 35(a) the seventh day after the district court orally pronounced sentence was July 6—the day that the court scheduled a hearing on Defendant's motion to correct his sentence.

Similarly, for purposes of Rule 35(a) the district court resentenced Defendant on the tenth day (the fifteenth calendar day) after the court orally

sentenced Defendant.  Because the July 9 resentencing was conducted more than seven "Rule 35(a) days" following the June 24 sentencing, the district court lacked jurisdiction under Rule 35(a) to resentence Defendant at that time.

The fact that Defendant made a motion for resentencing within the seven-day period, and that the district court scheduled a hearing on that motion within the seven-day period, did not extend the district court's jurisdiction to dispose of the motion beyond the seven-day period.  Rule 35(a) makes no provision for the extension of this period based on a timely motion by a party.  The plain language of the rule—which states that "[w]ithin 7 days after sentencing, *the court* may correct a sentence," Fed. R. Crim P. 35(a) (emphasis added)—makes clear that the seven-day period limits the time in which a court may impose a corrected sentence, not the time in which a party may make a motion for such a sentence.  That Rule 35(a) speaks in terms of actions by a court, and not a party, is telling: The other portions of Rule 35 speak of actions by a party, so the omission of such terms in Rule 35(a) appears intentional.  See Fed. R. Crim. P. 35(b)(1) ("Upon the government's motion . . . ."); Fed. R. Crim. P. 35(b)(2) (same).

Many courts of appeals have rejected the argument that filing a motion to correct a sentence or scheduling a hearing on such a motion within seven days of the pronouncement of sentence can result in the extension of the period in which a court may act pursuant to Rule 35(a).  See, e.g., United States v. Wisch, 275

- 11 -

F.3d 620, 626 (7th Cir. 2001) ("The time limit is jurisdictional, and, furthermore, the motion must be *ruled on* by the district court within seven days, not simply *filed with* the clerk of court during that time. . . . [A] court's failure to rule is functionally equivalent to an outright denial on the merits, thus making the judgment final on the date the district judge's power to alter the sentence expired.") (quotations and citation omitted); United States v. Morrison, 204 F.3d 1091, 1092, 1094 (11th Cir. 2000) (holding that a district court lacks jurisdiction under Rule 35 "to correct a sentence if the court sets the sentence aside within seven days of orally pronouncing it in open court but does not impose a new sentence until more than seven days have passed," and concluding that "[w]ithout imposition of a new and corrected sentence before the seven days were up," the court's order vacating the initial sentence "withered and is of no effect," such that the defendant was entitled to have his original sentence reimposed); United States v. Morillo, 8 F.3d 864, 869 (1st Cir. 1993) ("[I]f a motion is timely made but is not decided within the seven-day period, the judge's power to act under the rule subsides and the pending motion is deemed to be denied as of that date.").[7]

---

[7]Some might argue that United States v. Austin, 217 F.3d 595 (8th Cir. 2000), supports a tolling of the Rule 35(a) period when a district court simply schedules a hearing on a defendant's motion for a corrected sentence within seven days of imposing sentence. See id. at 598 ("Rule 35(c) . . . commands the court *to act* within seven days . . . .") (emphasis added). Tolling proponents might argue that in this case, the district court *acted* within the seven-day period when it

(continued...)

Our holding in <u>United States v. Corey</u>, 999 F.2d 493, 496 (10th Cir. 1993) (holding that filing a motion under the former Rule 35(c) delays the starting point of the period for filing an appeal until the district court disposes of the motion), appears at first glance to support the argument that filing a Rule 35(a) motion extends the district court's jurisdiction to rule on the motion beyond the seven-day period. <u>See also</u> <u>United States v. Smith</u>, 929 F.2d 1453, 1457-58 (10th Cir. 1991) (allowing the district court to resentence a defendant at a time when the defendant had not yet begun to serve his sentence and the government was permitted to take an appeal); <u>United States v. Carmouche</u>, 138 F.3d 1014, 1016

[7](...continued)
scheduled a hearing, though it did not *resentence* Defendant until later.

However, <u>Austin</u> uses "act" as a synonym for "rule," not to encompass non-dispositive steps that a court may take, such as setting a hearing date. <u>See</u> <u>id.</u> at 597-98 ("[W]e . . . reject the view . . . that a timely Rule 35(c) motion creates a new ten-day appeals period beginning whenever the court *acts* on the motion."); <u>see also</u> <u>Blackwell</u>, 81 F.3d at 948 n.4 ("[T]he government noted that the court resentenced Defendant sixty-one days after the initial sentence date. By our math, [the span was] seventy-two days. Regardless whether it was sixty-one or seventy-two days, however . . . the court did not act within Rule 35(c)'s seven-day period."); <u>United States v. Barragan-Mendoza</u>, 174 F.3d 1024, 1030 (9th Cir. 1999) (adopting view that "a district court's jurisdiction over a Rule 35(c) motion can last *no longer than the seven days* that the district court has to act on the motion after the imposition of sentence," thereby suggesting that "acting" by simply scheduling a hearing does not satisfy Rule 35(c)) (emphasis added). Moreover, if a court's mere scheduling of a hearing were to toll the running of the Rule 35(a) period, that tolling would extend the period and would therefore violate Fed. R. Crim. P. 45. <u>See</u> Fed. R. Crim. P. 45(b)(2) ("The court may not extend the time to take any action under Rule[] . . . 35, except as stated in [that] rule[].").

(5th Cir. 1998) (holding that a timely rule 35(c) motion renders an otherwise final order of a district court nonfinal until disposition of that motion). However, the 2002 amendments to Fed. R. App. P. 4(b) undermine this argument.

Fed. R. App. P. 4(b)(1) provides that "[i]n a criminal case, a defendant's notice of appeal must be filed" within ten days of "the entry of either the judgment or the order being appealed."[8] Fed. R. App. P. 4(b)(1). Rule 4(b) specifically provides that if a defendant makes one of several timely motions, the ten-day period will not begin to run until after the court decides that motion. Fed. R. App. P. 4(b)(3).

A 2002 amendment to Rule 4(b) states, "The filing of a motion under Federal Rule of Criminal Procedure 35(a) does not suspend the time for filing a notice of appeal from a judgment of conviction." Fed. R. App. P. 4(b)(5). The 2002 amendment to Fed. R. App. P. 4(b) bolsters our conclusion that Fed. R. App. P. 35(a) provides only a seven-day period in which a court could correct a sentence. See Fed. R. Crim. P. 35, Advisory Committee Notes for 1991 Amendments.[9] By providing that a motion to correct a sentence does not lengthen

---

[8]Thus, while Rule 35's seven-day time period for correcting a sentence begins on the day the district court orally pronounces sentence, Rule 4(b)'s ten-day time period for filing a notice of appeal begins on the day a judgment is entered on the criminal docket. Fed. R. App. P. 4(b)(6).

[9]Specifically, the Advisory Committee noted:

(continued...)

- 14 -

the time for a defendant to appeal, Rule 4 ensures that a defendant will always have time to file a notice of appeal after the seven days for correcting sentence have elapsed but before the ten days for filing a notice of appeal have run.

For these reasons, we conclude that the district court did not have jurisdiction to resentence Defendant on July 9. Ordinarily, in such a case, we strike down the later sentence and remand the case with instructions to reinstate the defendant's original sentence. See Blackwell, 81 F.3d at 949; Townsend, 33 F.3d at 1231.[10] However, we may order the reinstatement of the original sentence only if that sentence is permissible. Accordingly, we would next examine

[9](...continued)
At least two courts of appeals have held that the trial court has the inherent authority . . . to correct a sentence within the time allowed for sentence appeal by any party . . . . The amendment in effect codifies the result in those two cases but provides a more stringent time requirement. The Committee believed that the time for correcting such errors should be narrowed within the time for appealing the sentence to reduce the likelihood of jurisdictional questions in the event of an appeal and to provide the parties with an opportunity to address the court's correction of the sentence . . . in any appeal of the sentence. . . . The Committee contemplates that the court would enter an order correcting the sentence and that such order must be entered within the seven (7) day period so that the appellate process (if a timely appeal is taken) may proceed without delay and without jurisdictional confusion.

Fed. R. Crim. P. 35, Advisory Committee Notes for 1991 Amendments.

[10]We affirm Defendant's conviction but remand with instructions that the district court vacate Defendant's sentence and reinstate Defendant's original sentence. We do so to make clear that Defendant's continued incarceration pending the reinstatement of his original sentence is appropriate.

whether the district court erred in imposing the June 24 sentence, unless Defendant has waived his right to appeal from those errors. So, we next turn our attention to Defendant's waiver of his appellate rights.

## B. The Original Sentence and Defendant's Appellate Rights Waiver

We have fully examined the proceedings, as required by <u>Anders</u>, to determine whether there are any legal points arguable on their merits as to the propriety of the June 24 sentence. <u>See</u> 386 U.S. at 744. Our <u>Anders</u> review of the record in this case indicates that Defendant has three potentially meritorious issues for appeal based on the June 24 sentence: (1) whether a threat of death for purposes of the adjustment in U.S.S.G. § 2B3.1(b)(2)(F) may be made by pointing a firearm; (2) whether the threat of death adjustment may be applied in connection with the imposition of a sentence under § 924(c); and (3) whether Defendant's sentence violated <u>Booker</u>. However, because Defendant waived "all appellate rights except those relating to issues raised by the Defendant and denied by the District Court regarding the application of the Sentencing Guidelines," none of the potential issues for appeal can provide a basis to challenge the June 24 sentence if Defendant's waiver of his appellate rights is enforceable. We conclude that the waiver is enforceable, and therefore remand the case to the district court with instructions to reinstate the original sentence.

"[W]e generally enforce plea agreements and their concomitant waivers of appellate rights." United States v. Hahn, 359 F.3d 1315, 1318 (10th Cir. 2004) (en banc). In considering how to resolve appeals brought by defendants who have waived their appellate rights in a plea agreement, we first determine if an appeal falls within the scope of the appellate waiver. Id. at 1325. Second, we ascertain whether the defendant's waiver of his or her appellate rights was knowing and voluntary. Id. Finally, we evaluate whether enforcement of the appellate waiver would result in a miscarriage of justice because the district court relied on an impermissible factor, ineffective assistance of counsel in negotiating the waiver renders the waiver invalid, the sentence exceeds the statutory maximum, or the waiver is otherwise unlawful. Id. at 1327.

## 1. Scope of the Appellate Waiver

All of Defendant's potentially meritorious arguments challenging his June 24 sentence fall within the scope of his waiver of appellate rights. Whether a threat of death for purposes of the U.S.S.G. § 2B3.1(b)(2)(F) adjustment may be made merely by pointing a firearm, and whether the threat of death adjustment may be applied in connection with the imposition of a sentence under § 924(c), are issues relating to the application of the Sentencing Guidelines. However, Defendant did not raise these issues during the June 24 sentencing hearing.

Therefore, the issues are within the scope of Defendant's appellate rights waiver.[11]

Whether Defendant's sentence violated Booker does not relate to "issues regarding the application of the Sentencing Guidelines" within the meaning of Defendant's appellate rights waiver. The phrase "the application of the Sentencing Guidelines" in the plea agreement, does not refer to the arguments that (1) it was constitutionally impermissible for the district court to engage in factfinding by a preponderance of the evidence to enhance Defendant's sentence beyond the Guidelines range that would otherwise apply based on the facts that Defendant admitted during the plea hearing; or (2) the district court's application of the Sentencing Guidelines in a mandatory fashion was error. After all, Defendant agreed that the court was "required to consider the applicable sentencing guidelines" and could "depart from those guidelines under some circumstances." In so agreeing, Defendant indicated an acceptance of the mandatory Guidelines regime that existed before Booker, rather than a regime in which the Guidelines are advisory and variances from the Guidelines may be

---

[11]Although the district court sua sponte raised these issues on July 9, the court had no jurisdiction to reconsider Defendant's sentence at that time. Therefore, our focus must remain on the events that occurred on or before June 24. During that time, neither issue was raised or ruled upon.

justified based on statutory considerations, not just the Guidelines' departure provisions.

Our conclusion is buttressed by another court of appeals' observation that Booker arguments may fall within the scope of a defendant's waiver of his or her appellate rights. See United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005) ("'[T]he right to appeal a sentence based on Apprendi/Booker grounds can be waived in a plea agreement. Broad waiver language covers those grounds of appeal.'") (quoting United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005)), petition for cert. filed, (Apr 05, 2005) (No. 04-9566). Therefore, we hold that all of Defendant's potential arguments on appeal fall within the scope of his appellate rights waiver.

### 2. Knowledge and Voluntariness

Defendant's waiver of his appellate rights was knowing and voluntary. "When determining whether a waiver of appellate rights is knowing and voluntary, we especially look to . . . . whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily. . . . [and] for an adequate [Rule] 11 colloquy." Hahn, 359 F.3d at 1325 (citation omitted).

In this case, both conditions are met. Defendant signed, dated, and initialed the appellate rights waiver in his plea agreement. Defendant signed a similar

waiver in his "Petition to Enter Pleas of Guilty" in open court in the presence of his attorney. In that petition, Defendant stated that he offered his pleas freely and voluntarily, with "full understanding of all the matters set forth . . . in th[e] petition." Finally, the terms of the plea agreement were reiterated during Defendant's plea hearing. At that hearing, the district court specifically asked Defendant whether he understood the appellate rights waiver, and Defendant stated that he did.

To the extent that Defendant might argue that the Supreme Court's decisions in Blakely and Booker, both of which were issued subsequent to his original sentencing, somehow changed the way that courts conduct and review sentencings to such an extent that Defendant's waiver of his appellate rights was not knowing and voluntary, that argument is without merit.[12] The Supreme Court has made it clear that a defendant's decision to give up some of his rights in connection with making a plea—including the right to appeal from the judgment entered following that plea—remains voluntary and intelligent or knowing despite subsequent developments in the law. After all, "absent misrepresentation or other impermissible conduct by state agents, . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because

_____

[12]Similarly without merit, for the same reasons, would be any argument that the subsequent case authority of Blakely and Booker rendered Defendant's guilty plea involuntary or unintelligent.

- 20 -

later judicial decisions indicate that the plea rested on a faulty premise." Brady v. United States, 397 U.S. 742, 757 (1970). "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action." Id.; see also United States v. Ruiz, 536 U.S. 622, 630 (2002) ("[T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.") (footnote omitted); id. (citing as one possible misapprehension that "defendant failed to anticipate a change in the law regarding relevant punishments") (quotations omitted); Bousley v. United States, 523 U.S. 614, 619 (1998) ("We further held [in Brady] that [the defendant's] plea was intelligent because, although later judicial decisions indicated that at the time of his plea he did not correctly assess every relevant factor entering into his decision, he was advised by competent counsel, was in control of his mental faculties, and was made aware of the nature of the charge against him.") (citations and quotations omitted).

In accordance with these principles, the Eleventh and Sixth Circuits have determined that a defendant's pre-Booker waiver of the right to appeal was

knowing and voluntary. See Grinard-Henry, 399 F.3d at 1297 ("[Defendant] knowingly and voluntarily waived his right to appeal his sentence on the grounds he asserts on appeal . . . ."); United States v. McGilvery, 403 F.3d 361, 362-63 (6th Cir. 2005).

Similarly, other courts of appeals have concluded that defendants' pre-Booker guilty pleas were voluntary and intelligent. See United States v. Bradley, 400 F.3d 459, 463 (6th Cir. 2005) ("Plea agreements . . . may waive constitutional or statutory rights then in existence as well as those that courts may recognize in the future. . . . [W]here developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature. A valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance."); United States v. Sahlin, 399 F.3d 27, 30 (1st Cir. 2005) ("We reject [the defendant]'s claim that he should be permitted to withdraw his guilty plea because it was not voluntary, being based on an understanding of a sentencing scheme rendered erroneous by Booker. In ordinary circumstances Booker provides no basis to vacate the entry of a pre-Booker guilty plea on grounds of lack of voluntariness.") (footnote omitted).

Finally, we have noted that a defendant's waiver of his appellate rights is not otherwise unlawful based on the subsequent issuance of Booker. See United

States v. Porter, No. 04-4009, 2005 WL 1023395, at *7-*8 (10th Cir. May 3, 2005) ("[W]e find the change Booker rendered in the sentencing landscape does not compel us to hold [the defendant]'s plea agreement unlawful. . . . To allow defendants or the government to routinely invalidate plea agreements based on subsequent changes in the law would decrease the prospects of reaching an agreement in the first place, an undesirable outcome given the importance of plea bargaining to the criminal justice system."). Therefore, it seems clear that in this case, Defendant's waiver of his appellate rights was knowing and voluntary.

### 3.     Miscarriage of Justice

Enforcing Defendant's waiver of his appellate rights will not result in a miscarriage of justice. Hahn details the only four situations in which enforcement of an appellate waiver may result in a miscarriage of justice. 359 F.3d at 1327. Two are clearly not at issue in this appeal: The district court did not rely on an impermissible factor, cf. id., and we cannot evaluate in this direct appeal whether ineffective assistance of counsel in negotiating the waiver renders the waiver invalid. Cf. id.; see United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). Only the other two situations detailed in Hahn, which arise when the sentence exceeds the statutory maximum or the waiver of appellate rights is otherwise unlawful, see 359 F.3d at 1327, are even arguably relevant.

### a.     Sentence in Excess of the Statutory Maximum

To determine whether a sentence "exceeds the statutory maximum" within the meaning of Hahn, we first must determine the "statutory maximum" to which Hahn refers. We look first to the plain meaning of the phrase "statutory maximum." Ordinarily and naturally, the phrase "statutory maximum" refers to the longest sentence that the statute punishing a crime permits a court to impose. Thus, it seems likely that meaning is intended in Hahn.

This conclusion is buttressed by the interpretation of "statutory maximum" in case law contemporaneous with Hahn. Four years prior to our decision in Hahn, the Supreme Court held in Apprendi v. New Jersey, 530 U.S. 466 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. After Apprendi and before Blakely, we "applied Apprendi only where a sentencing court had imposed a sentence above the statutory maximum permitted by the statute of conviction, regardless of what fact finding the court, rather than the jury, conducted [under the Guidelines] to impose a sentence within that statutory maximum." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005) (collecting cases). Thus, in the time between Apprendi and Hahn, which was decided a few months before Blakely, courts nearly unanimously interpreted the phrase "statutory maximum" according to its plain meaning.

That Blakely and Booker take a different approach in defining "statutory maximum" does not undercut the conclusion that the plain meaning of the phrase was intended in Hahn. In Blakely, the Court gave a new term of art meaning to the phrase "statutory maximum" when it stated that "the statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected by the jury verdict or admitted by the defendant." Blakely, 124 S. Ct. at 2537 (quotation and emphasis omitted); see Price, 400 F.3d at 847. In Booker, the Court reiterated Blakely's clarification in applying Blakely to the federal sentencing guidelines. See 125 S. Ct. at 749.

However, the Blakely/Booker definition of "statutory maximum" has always been qualified with the phrase "for Apprendi purposes," and has only been applied in sentencing guidelines cases. In holding that the term of art meaning for "statutory maximum" applies in sentencing guidelines cases, the Supreme Court has not mandated that every time the phrase "statutory maximum" is invoked, the Blakely/Booker definition should apply. Indeed, the use of "statutory maximum" in Blakely and Booker is distinguishable from the phrase's use in Hahn—a case with no connection to the sentencing guidelines concerns that motivated Blakely and Booker.

Hahn instead addressed the enforceability of appellate rights waivers. We have never based the validity of an appellate rights waiver on the application of

sentencing guidelines.  Rather, we have long considered a waiver's enforceability in light of whether the sentence the district court imposed was within the statutory maximum provided for the offense of conviction.  The cases cited by Hahn for the prospect that appellate rights waivers are subject to exception for sentences that exceed the statutory maximum make this clear, in that they are themselves based on holdings that clearly embrace the plain meaning of "statutory maximum."[13]

The conclusion that the plain meaning of "statutory maximum" should control in interpreting Hahn is bolstered by the Eleventh Circuit's decision in an analogous situation.  See Rubbo, 396 F.3d at 1330.  In Rubbo, the defendant, prior to Blakely and Booker, entered into a plea agreement in which she waived her rights to appeal her sentence unless "the sentence exceeds the maximum permitted by statute."  396 F.3d at 1333 (quotation omitted).  The defendant argued that her appeal waiver did not preclude her from challenging the constitutionality of her sentence under Booker, because her sentence was in excess of the statutory maximum as Blakely and Booker apply that term.  See Rubbo, 396 F.3d at 1331-32.

---

[13]Hahn took the phrase "exceeds the statutory maximum" from United States v. Elliott, 264 F.3d 1171, 1173 (10th Cir. 2001), and United States v. Cockerham, 237 F.3d 1179, 1182 (10th Cir. 2001).  Both Elliott and Cockerham cite to United States v. Black, 201 F.3d 1296, 1301 (10th Cir. 2000).  Black cites to United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992), which states, "a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute."

The Eleventh Circuit rejected the defendant's premise "that [the] 'statutory maximum' for <u>Booker</u> purposes is the same thing as 'the maximum permitted by statute' for purposes of [the defendant]'s appeal waiver," noting:

> The two are not the same. The context in which the terms are used and the meaning they convey are different. . . .
>
> In the <u>Apprendi/Booker</u> line of decisions, the Supreme Court used the term "statutory maximum" to describe the parameters of the rule announced in those decisions, a rule that had nothing to do with the scope of appeal waivers. The term was defined in a specialized, which is to say a non-natural, sense. It was defined that way not only for semantic convenience but also in order to justify and explain the holdings the Court entered in those decisions. Everyone knows that a judge must not impose a sentence in excess of the maximum that is statutorily specified for the crime. By labeling a sentence that the judge may not impose under the <u>Apprendi/Booker</u> doctrine as one in excess of the "statutory maximum," the Court may have sought to call into play that well-known principle of law.
>
> Whether it did, however, is not the point for present purposes. The point here is that the definition of "statutory maximum" the Supreme Court used to describe and explain its holdings in those cases says nothing about what [the defendant] and the government meant when they used the term "the maximum permitted by statute" in the appeal waiver.

<u>Rubbo</u>, 396 F.3d at 1334 (citations, footnote omitted). Looking to the parties' intent, the Eleventh Circuit held that the parties instead meant the "usual and ordinary meaning" of the phrase "exceeds the maximum permitted by statute" – the "upper limit of punishment that Congress has legislatively specified for the violation of a statute." <u>Id.</u> at 1334-35 (quotations omitted).

The Eleventh Circuit is not the only court of appeals to interpret the phrase "statutory maximum" in this way. See United States v. West, 392 F.3d 450, 460 (D.C. Cir. 2004) (stating that the "most reasonable inference" is that the phrase "statutory maximum" in the exception to a defendant's appellate rights waiver refers to "the maximum fines and periods of imprisonment for violations" of the statutes of conviction). Relatedly, we have held that an exception to a defendant's waiver of his appellate rights for a sentence "'above the maximum statutory penalty provided in the statute of conviction'" does not refer to the maximum penalty that the court could have imposed under the Guidelines based on the facts that the defendant admitted, but rather to the maximum provided in the statute of conviction. Porter, 2005 WL 1023395, at *5.

Moreover, using the Blakely/Booker definition of "statutory maximum" in interpreting Hahn would be improper because doing so would render it virtually impossible for a defendant to waive his or her Sixth Amendment Booker rights. After all, if we were to use the Blakely/Booker definition of "statutory maximum" in interpreting Hahn, a defendant could appeal his or her sentence, alleging a constitutional Booker error (or Blakely challenge), and raise that issue regardless of a general waiver of appellate rights in the plea agreement. Yet that result would stand in tension with established Sixth Amendment case law. The Sixth Amendment is the basis for the Blakely/Booker line of authority. See Blakely,

124 S. Ct. at 2534; Booker, 125 S. Ct. at 746; see also Apprendi, 530 U.S. at 476, 488 (applying Fifth and Sixth Amendments to a state through the Fourteenth Amendment). And "it is axiomatic that a defendant may waive his Sixth Amendment right to trial by jury." Booker, 125 S. Ct. at 774 (Stevens, J., dissenting) (citing Patton v. United States, 281 U.S. 276, 312-13 (1930), abrogated on other grounds by Williams v. Florida, 399 U.S. 78 (1970)); see also Blakely, 124 S. Ct. at 2541 (noting that "nothing prevents a defendant from waiving his Apprendi rights").

Accordingly, we hold that "statutory maximum" in Hahn refers to the upper limit of punishment that Congress has legislatively specified for the violation of a given statute. In this case, Defendant's sentence did not fall beyond that limit, and Defendant's waiver of his appellate rights is not unenforceable based on the length of Defendant's sentence relative to that statutory maximum.

**b. Otherwise Unlawful Waiver**

For a waiver to be otherwise unlawful, "the error must seriously affect the fairness, integrity or public reputation of judicial proceedings," as that test was employed in United States v. Olano, 507 U.S. 725, 732 (1993). Hahn, 359 F.3d at 1327 (quotations and alteration omitted). It may be argued that enforcing Defendant's waiver of his appellate rights will cause a miscarriage of justice because enforcing that waiver will result in Defendant's being imprisoned for an

additional ten months as a result of bringing this appeal. According to this argument, by reversing the July 9 sentence, considering Defendant's potential arguments to the original sentence waived, and ordering the district court to reimpose the original sentence, we are discouraging defendants from exercising their appellate rights.

This argument misses the mark. It is not the enforcement of Defendant's appellate rights waiver that results in our invalidation of his July 9 sentence. Rather, it is the fact that the district court lacked jurisdiction to impose that sentence. Even if we were to consider the merits of Defendant's potential arguments addressing the June 24 sentence, we might still conclude that the district court did not err in imposing that sentence.[14] Therefore, the enforcement of Defendant's waiver of his appellate rights is not determinative of Defendant's receiving a higher sentence, and does not therefore result in a miscarriage of justice.

Moreover, we note that our decision to enforce Defendant's waiver of his appellate rights leaves Defendant in the same position in which he would have

[14]Because we resolve this case on the grounds that Defendant waived his appellate rights, we take no position on whether a threat of death for purposes of the adjustment in U.S.S.G. § 2B3.1(b)(2)(F) may be made merely by pointing a firearm, whether the threat of death adjustment may be applied in connection with the imposition of a sentence under § 924(c), or whether Defendant' sentence violates Booker.

been if the district court had not improperly resentenced him. Had the district court not improperly resentenced Defendant, Defendant would have been facing a 135-month sentence and would have been able to appeal only issues "raised by the Defendant and denied by the District Court regarding the application of the Sentencing Guidelines." Based on our decision, Defendant will face the same 135-month sentence and will be unable to obtain relief for issues included within his appellate rights waiver. Since our decision merely restores the status quo prior to the district court's improper action, our decision to enforce the appellate rights waiver does not result in a miscarriage of justice. Indeed, not enforcing the appellate rights waiver, merely because doing so would result in Defendant receiving a higher sentence than he received as a result of the district court's decision to resentence him on July 9, would be a real miscarriage of justice. After all, that would mean that this Defendant, out of all the defendants who knowingly and voluntarily waived their appellate rights, would obtain relief from that waiver—and this only because of the district court's improper decision to resentence Defendant. Therefore, we hold that enforcing Defendant's waiver of his appellate rights will not result in a miscarriage of justice.

## III.    Conclusion

For the foregoing reasons, we AFFIRM Defendant's conviction and REMAND for the district court to vacate Defendant's later sentence and reinstate Defendant's original sentence.