**F I L E D**

**UNITED STATES COURT OF APPEALS**

**October 26, 2005**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 04-7093 |
| v. | (E.D. Oklahoma) |
| DANNY JAMES GOLDEN, | (D.C. No. CR-04-11-5-P) |
| Defendant-Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **McKAY**, and **HENRY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Danny James Golden pleaded guilty to one count of conspiracy to distribute methamphetamine, in violation 21 U.S.C. § 846. The district court sentenced him

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

to 195 months of imprisonment, 60 months of supervised release, and a $100.00 special assessment. Mr. Golden claims that the district court committed error under *United States v. Booker*, 125 S. Ct. 738 (2005), when it found by a preponderance of the evidence that the underlying crime involved certain drug quantities that would warrant a higher base offense level under the guidelines. We conclude that Mr. Golden's plea agreement waived his right to bring this appeal, and for the reasons stated below, we affirm his conviction and sentence.

## I. BACKGROUND

Co-defendant Olen G. Rambo owned and operated a convenience store located in Stuart, Oklahoma, and sometime in 1999 began selling large amounts of pseudoephedrine illegally to co-defendants Tammy and Ernestine Golden. The demand for pseudoephedrine from Tammy and Ernestine Golden became so large that eventually Rambo set up post office boxes in Stuart, Krebs, McAlester, and Calvin, Oklahoma, where he had the pseudoephedrine shipped. Ernestine and Tammy Golden would then pick up the large quantities of pseudoephedrine from those locations, and sign the name of Olen Rambo on the delivery sheet. Grand jury subpoenas were issued to multiple suppliers of pseudoephedrine, tracing back the large amounts of pseudoephedrine ordered by Olen Rambo and sold to Ernestine and Tammy Golden.

In November, 2001, Special Agent Jim Waddell of the Drug Enforcement

Administration, while acting in an undercover capacity, made a controlled purchase of methamphetamine in excess of fifty grams from Tammy and Ernestine Golden; that transaction was captured on video tape. Furthermore, confidential informants who sold methamphetamine for the Goldens indicated that from 1999 to October 2001, Mr. Golden would use the pseudoephedrine supplied by Tammy and Ernestine Golden, and purchased from Mr. Rambo, to manufacture and distribute methamphetamine.

When Mr. Golden entered his guilty plea, the government agreed to file a motion for acceptance of responsibility. A written plea agreement was disclosed to the Court and acknowledged by the defendant. At paragraph 22 of that plea agreement, Mr. Golden acknowledged that he was waiving any and all appellate rights except for the right to challenge an upward departure of the sentencing guidelines.

The presentence report ("PSR") recommended that Mr. Golden's offense level was 38, minus three points for the government's motion for acceptance of responsibility, for a final offense level of 35, placing the defendant's sentencing range at 168-210 months. Mr. Golden objected to the PSR, raising concerns under *Blakely v. Washington*, 124 S. Ct. 2531 (2004). At the sentencing hearing the district court overruled the objections and noted: "Based upon defendant's failure to object to the factual information contained in the Presentence report, the

Court finds, by a preponderance of the evidence, that the Base Offense Level contained in the presentence report at paragraphs 40 and 41 is accurate. Therefore, the defendant's objection is overruled." The district court then sentenced the defendant to 195 months' incarceration, and 60 months' supervised.

## II. DISCUSSION

This court has concluded that a defendant's waiver of his appellate rights, made before the Supreme Court issued its opinion in *Blakely*, is enforceable and may bar consideration of any claims he may assert under *Booker*. *United States v. Green*, 405 F.3d 1180, 1189 (10th Cir. 2005). The Tenth Circuit "generally enforces plea agreements and their concomitant waivers of appellate rights." *United States v. Hahn*, 359 F.3d 1315, 1318 (10th Cir. 2004) (en banc). In considering how to resolve appeals brought by defendants who have waived their appellate rights in a plea agreement, we must determine (1) if an appeal falls within the scope of the appellate waiver; (2) whether the defendant's waiver of appellate rights was knowing and voluntary; and (3) whether enforcement of the appellate waiver would result in a miscarriage of justice. *Id.* at 1325.

The defendant's waiver, found on page 11, in paragraph 22 of the plea agreement, states as follows:

> *Defendant expressly waives the right to appeal defendant's sentence on any ground, except to challenge an upward departure from the applicable guideline range as determined by the Court. Defendant specifically waives any appeal rights conferred by Title 18, United*

-4-

*States Code, Section 3742, any post-conviction proceedings, and any habeas corpus proceedings.* Defendant is aware that Title 18, United States Code, Section 3742 affords defendant the right to appeal the sentence imposed. Defendant is also aware that the sentence herein has not yet been determined by the Court. Defendant is aware that any estimate of the probable sentencing range that defendant may receive from his attorney, plaintiff, the probation office, or any agents of such parties, is not a promise, and is not binding on plaintiff, the probation office, or the Court. Realizing the uncertainty in estimating what sentence defendant will ultimately receive, defendant knowingly waives the right to appeal the sentence (except as to an upward departure) and agrees not to contest such sentence in any post conviction proceeding, including but not limited to writs of habeas corpus or coram nobis concerning any and all motions, defenses, probable cause determinations, and objections which defendant has asserted or could assert to this prosecution and to the court's entry of judgment against defendant and imposition of sentence, in exchange for the concessions made by the United States in this agreement and the execution of the agreement itself.[1]

(Emphasis supplied).

1. Language of the agreement

Clearly, the language of the plea agreement encompasses this appeal. The government states that broad language of the waiver – that the "defendant expressly waives the right to appeal defendant's sentence *on any ground*, except to challenge an upward departure from the applicable guideline range as determined by the court" – clearly demonstrates his intent to waive all potential issues on appeal, except for the one basis specifically exempted. (Emphasis

---

[1] We note that the plea agreement is not in the record. Mr. Golden does not dispute this recitation of para. 22, taken from the government's brief, is correct. *See* Aple's Br. at 13.

added).  The defendant does not contest this language is part of the plea agreement.  Because his current argument on appeal does not relate to a challenge to an upward departure, but merely an enhancement, defendant's *Blakely* argument is within the scope of his waiver.  *See United States v. Waugh*, 207 F.3d 1098, 1101 (8th Cir. 2000) (noting that enhancements and departures are "two very different concepts").

2. Knowing and voluntary

According to the government, and undisputed by Mr. Golden, he agreed that the court was "required to consider the applicable sentencing guideline" and could "depart from those guidelines under some circumstances."  Aple's Br. at 14. In so agreeing, he indicated an acceptance of the mandatory guidelines regime that existed before *Booker*, rather than a regime in which the guidelines are advisory.

In *Green*, 405 F.3d at 1189, we cited the Eleventh Circuit's observation that *Booker* arguments may fall within the scope of a defendant's waiver of his or her appellate rights.  *See United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir.) ("[t]he right to appeal a sentence based on *Apprendi/Booker* grounds can be waived in a plea agreement. Broad waiver language covers those grounds on appeal.") (internal quotation omitted), *cert. denied*, 125 S. Ct. 2279 (2005).  In *Green*, we held that all of defendant's potential arguments on appeal fell within

the scope of his appellate rights waiver. The same is true here: the record as a whole reflects that Mr. Golden knowingly and voluntarily waived his appellate rights, as reflected in the change of plea.

We have also noted that a defendant's waiver of his appellate rights is not otherwise unlawful based on the subsequent issuance of *Booker*. *See United States v. Porter*, 405 F.3d 1136, 1145 (10th Cir. 2005) ("[W]e find the change *Booker* rendered in the sentencing landscape does not compel us to hold the defendant's plea agreement unlawful . . . . To allow defendants or the government to routinely invalidate plea agreements based on subsequent changes in the law would decrease the prospects of reaching an agreement in the first place, an undesirable outcome given the importance of plea bargaining to the criminal justice system.")

3. Miscarriage of justice

Finally, we agree with the district court that enforcing Mr. Golden's waiver of his appellate rights will not result in a miscarriage of justice. The sentence imposed did not exceed the statutory maximum of twenty years or the guideline maximum as provided by the sentencing range calculated. The defendant's sentence of 195 months falls well within the range of either.

Mr. Golden suggests only one reason why the waiver is unenforceable: Citing *Hahn*, 359 F.3d at 1328, he notes the government's failure to file a timely

motion to enforce the waiver under Tenth Circuit Rule 27.2. However, "[n]othing in Rule 27.2 provides that a contention that *can* be raised by motion *must* be raised by motion, on pain of forfeiture. *United States v. Clayton,* 416 F.3d 1236, 1238 (10th Cir. 2005). In *Clayton* we noted that "[a] Rule 27.2 motion is one method whereby the government may choose to enforce the waiver, but the rule does not prevent the government from seeking enforcement through other means, such as its brief on the merits." *Id.* at 1239. Because the government addressed Mr. Golden's waiver of appellate rights in its merits brief, Mr. Golden's argument thus fails.

## III. CONCLUSION

Accordingly, we enforce Mr. Golden's waiver of his right to appeal, and DISMISS this appeal.

Entered for the Court,

Robert H. Henry
Circuit Judge