**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JESUS RIOS-ZAMORA,

Defendant-Appellant.

No. 04-3186

(D. Kansas)

(D.C. No. 03-CR-20152-GTV)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **McKAY**, and **HARTZ**, Circuit Judges.

I. BACKGROUND

On October 17, 2003, Jesus Rios-Zamora was charged with one count of

being found illegally in the United States after having been deported, in violation

of 8 U.S.C. § 1326(a) and (b)(2). Mr. Rios-Zamora moved to dismiss the

indictment, arguing that the creation of the Department of Homeland Security and

the attendant transfer of certain immigration-related responsibilities from the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of TENTH CIR. R. 36.3.

Attorney General to the Secretary of Homeland Security on March 1, 2003 created an overbreadth or vagueness defect in the indictment. The district court denied the motion.

Mr. Rios-Zamora then entered a conditional guilty plea pursuant to a plea agreement that preserved his right to appeal the denial of his motion to dismiss the indictment, but waived any rights to appeal a sentence within the guideline range determined by the court. The district court sentenced Mr. Rios-Zamora to 77 months of imprisonment, to be followed by a two-year term of supervised release.

Mr. Rios-Zamora (1) appeals the denial of his motion to dismiss the indictment, and (2) contends that, in the wake of *United States v. Booker*, 125 S. Ct. 738 (2005), the district court erred when it sentenced him under a mandatory sentencing scheme. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's denial of the motion to dismiss the indictment. In addition, we hold that Mr. Rios-Zamora cannot bring a *Booker* challenge because his plea agreement knowingly and voluntarily waived his right to appeal his sentence.

## II. DISCUSSION

### A. Challenges to the Indictment

Mr. Rios-Zamora contends that the indictment (1) charged him with an additional element offense that is not in the statute (the failure to obtain the

-2-

advance consent of the Secretary of Homeland Security for readmission to the United States); (2) failed to satisfy the Notice Clause of the Sixth Amendment and the Indictment Clause of the Fifth Amendment, and is therefore unconstitutionally vague, and (3) charged him with conduct that he was incapable of committing.

"Generally, we review the grant or denial of a motion to dismiss an indictment for an abuse of discretion. However, when the dismissal involves issues of statutory interpretation, or when the sufficiency of a charge is challenged, we review the district court's decision de novo." *United States v. Giles,* 213 F.3d 1247, 1248-49 (10th Cir.2000).

The indictment read as follows:

> On or about September 16, 2003, in the District of Kansas, JESUS RIOS-ZAMORA, the defendant herein, an alien, that is, a person who is not a citizen or national of the United States, was knowingly and unlawfully found in the United States *without obtaining advance consent from the Attorney General and the Secretary of Homeland Security* for readmission to the United States after having been convicted of an aggravated felony and having been deported from the United States on or about August 5, 2002, in violation of Title 8 United States Code, Section 1326(a) and (b)(2), with reference to Title 6 United States Code, Sections 202(3), 202(4), 557.

Rec. vol. I, doc. 13, at 1 (emphasis added).

1. The indictment sufficiently charged the offense

 Section 1326(a) provides:

[A]ny alien who–

-3-

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, *the Attorney General has expressly consented to such alien's reapplying for admission*; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both. 8 U.S.C. § 1326(a) (emphasis added).

Mr. Rios-Zamora contends that the indictment is fatally flawed because it charges an element not contained in § 1326, that is, Mr. Rios-Zamora must have "obtain[ed] advance consent from the . . . Secretary of Homeland Security for readmission to the United States." Rec. vol. I, doc. 13, at 1.

"On March 1, 2003, the Immigration and Naturalization Service ceased to exist as an agency within the Department of Justice, and its enforcement functions were transferred to the Department of Homeland Security." *United States v. Sandoval*, 390 F.3d 1294, 1296 n.2 (10th Cir. 2004). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002).[1] The government responds

_____

[1] At oral argument, the panel asked the government to trace the statutory and regulatory provisions that preceded the creation of the Department of Homeland Security. In its supplemental authority, the government explains that, prior to the creation of the Department of Homeland Security, the Attorney

(continued...)

that the statutory reference to the Attorney General that currently remains in the text of 8 U.S.C. § 1326 was addressed by a proviso in the Homeland Security Act deeming such references to refer to the Secretary of Homeland Security:

> With respect to any function transferred by or under this chapter (including under a reorganization plan that becomes effective under section 542 of this title) and exercised on or after the effective date of this chapter, *reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary*, other official, or component of the Department to which such function is so transferred.

6 U.S.C. § 557 (emphasis added).

We agree with the government and the district court that the indictment sufficiently charges an offense under § 1326. To the extent the indictment includes an additional allegation, that is, the advance consent from both the Attorney General and the Secretary of Homeland Security, such language might

---

[1](...continued)
General's statutory authority to consent to a previously removed alien's reapplying for admission was found in 8 U.S.C. §§ 1182(a)(9)(A)(iii), (a)(9)(C)(ii). The Attorney General's more general authority in immigration matters was addressed in 8 U.S.C. §1103(a)(1) (2000).

Regulations governing the procedure for obtaining consent to reapply for admission after removal are set out in 8 C.F.R. § 212.2. Regulations delegating the authority of the Attorney General to enforce the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens to the INS Commissioner, and regulations further delegating authority to INS regional and district directors, were set out in 8 C.F.R §§ 2.1, 100.2(a) & (d), 103.1(g) (2001). In addition, 6 U.S.C. § 271(b) transfers adjudications previously made by the Commissioner of Immigration and Naturalization to the Director of the Bureau of Citizenship and Immigration.

be mere surplusage that need not be proven. *See United States v. Smith*, 838 F.2d 436, 439 (10th Cir. 1988) ("When the language of the indictment goes beyond alleging the elements of the offense, it is mere surplusage and such surplusage need not be proved."). With the transfer of authority under § 557, as of March 1, 2003, the title "Attorney General" is synonymous with the Secretary of Homeland Security. Under the Homeland Security Act, only advance consent from the Secretary of Homeland Security is required, and the government concedes as much. Finally, the record establishes that Mr. Rios-Zamora did not seek permission (1) either from the Attorney General from the date of his deportation until March 1, 2003, or (2) from the Secretary of Homeland Security after March 1, 2003. Mr. Rios-Zamora's challenge thus fails.

2. Section 1325 is not unconstitutionally vague as applied to Mr. Rios-Zamora

In a similar vein, Mr. Rios-Zamora contends that § 1326 is unconstitutionally vague because of the absence of a reference to the Secretary of Homeland Security, therefore not providing fair notice of the need for such advance consent.

> [T]he fair warning requirement embodied in the Due Process clause of the Fourteenth Amendment prohibits the [government] from holding an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, [617] (1954). This prohibition against excessive vagueness does not, however, invalidate every statute which a reviewing court

believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "in most English words and phrases there lurk uncertainties." *Robinson v. United States*, 324 U.S. 282, [286] (1945).

*United States v. Herrera*, 584 F.3d 1137, 1149 (2d Cir. 1978) (some citations omitted).

Although we agree with Mr. Rios-Zamora that § 1326 and § 557 fail to cross-reference each other, it is of no consequence here. Had Mr. Rios-Zamora sought advance consent from the Attorney General pursuant to §1326 to the Attorney General, and the Attorney General neglected to refer the application to the Secretary of Homeland Security, he might present a persuasive argument. However, as we have noted, Mr. Rios-Zamora failed to seek advance consent from either the Attorney General or the Secretary of Homeland Security. Thus, we conclude that the statute made it sufficiently clear that he was barred from returning to the United States without permission. *See e.g.*, *United States. v. Vanness*, 342 F.3d 1093, 1098 (10th Cir. 2003) (declining to reach determination of whether unreasonable noise ordinance was unconstitutional). Section 1326 is not unconstitutionally vague as applied to Mr. Rios-Zamora.

3. Mr. Rios-Zamora was legally capable of performing the act with which he was charged

In his final challenge to the indictment, Mr. Rios-Zamora contends that he is alleged to have illegally re-entered the United States in June 2003. At that

time, the Attorney General was no longer responsible for consenting to applications for permission to enter the United States. *See* 6 U.S.C. § 202(3), (4). Thus, he argues that an application to the Attorney General during June 2003 would have been futile and of no legal effect. According to Mr. Rios-Zamora, because he cannot violate the law if he fails to perform an act that he is legally incapable of performing, the indictment cannot be upheld.

Mr. Rios-Zamora's argument is flawed for several reasons. First, the indictment did not charge him with illegal reentry in June 2003. Rather, the indictment alleged that Mr. Rios-Zamora was found unlawfully in the United States on September 16, 2003, after having been deported on August 5, 2002. Second, as the government points out, Mr. Rios-Zamora could have obtained permission to reenter (1) from the Attorney General from the date of his deportation until the transfer of authority on March 1, 2003, or (2) from the Secretary of Homeland Security beginning on March 1, 2003. *See* Aple's Br. at 17. Mr. Rios-Zamora was not charged with an act that he was incapable of performing.

B. Mr. Rios-Zamora's Plea Agreement Waived His Right to Maintain a Challenge to his Sentence

Mr. Rios-Zamora also contends that we should remand his case for resentencing in light of *Booker* because the district court erred in applying the

-8-

guidelines in a mandatory fashion. However, in his plea agreement, Mr. Rios-Zamora "knowingly and voluntarily waive[d] any right to appeal or collaterally attach any matter in connection with this prosecution, conviction and sentence, with the exception that he [could] appeal the denial of his motion to dismiss the indictment." Rec. vol. I, doc. 30, at 5 (emphasis omitted). Mr. Rios-Zamora also "knowingly waive[d] any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court," unless the United States exercises its right to appeal the sentence. *Id.*

In his reply brief, Mr. Rios-Zamora acknowledges that our holding in *United States v. Green*, 405 F.3d 1180 (10th Cir. 2005), "appears to dispose of [his] claim regarding *Booker*." Reply Br. at 5-6. In *Green*, we noted that "a defendant's waiver of his appellate rights is not otherwise unlawful based on the subsequent issuance of *Booker*." 405 F.3d at 1191. Mr. Rios-Zamora nonetheless raises this claim in the event that the en banc court reconsider its holding in *Green*.

We appreciate Mr. Rios-Zamora's candor, and agree that his pre-*Booker* plea agreement was knowing and intelligent. Further, our enforcement of Mr. Rios-Zamora's waiver will not result in a miscarriage of justice because the (1) sentence was within the recommended guideline range, (2) the district court did not rely on an impermissible factor at sentencing, and (3) the sentence was not

otherwise unlawful. Thus he is unable to raise this *Booker* challenge because our holding in *Green* precludes his claim.

## III. CONCLUSION

Accordingly, we AFFIRM the district court's denial of the motion to dismiss the indictment, and we ENFORCE Mr. Rios-Zamora's waiver of his right to appeal his sentence, thus dismissing that part of the appeal.

Entered for the Court,


Robert H. Henry
Circuit Judge

-10-